[Kimbrough *et al.* v. Nelms *et al.*]

# Kimbrough *et al.* v. Nelms *et al.*

### *Bill in Equity to enforce Resulting Trust in Lands.*

1. *Resulting trust; sufficiency of evidence.*—On a bill filed by the heirs of P., complainants' sister, who died intestate, to establish a resulting trust in 225 acres of land, the legal title to which was vested in her husband in his life time, through whom the defendants to the bill claimed title as devisees under his will, the equity of the bill being rested upon the averment that the money and land of P. constituted the sole consideration of the lands in controversy, the legal title to which her said husband took in his own name, it was shown that P.'s brother C. at one time owned the land in controversy and conveyed it to her husband for the recited consideration of $800. The father of complainants and P. and C. died leaving an estate in realty which was partitioned equally between the three complainants, P. and C., each of his said five children receiving 112½ acres, for which they did not execute deeds or releases, but each simply took possession of his or her tract. One of complainants and heir of the deceased father conveyed her tract or share to C., which tract was included in the deed from C. to P.'s husband. C. was in possession of 225 acres conveyed in said deed, which included the tract he purchased from one of complainants and his own share. The complainant who sold to C. was the only one of the complainants who parted with the tract allotted them, respectively, in the partition. After the conveyance to P.'s husband, C. was in possession of the tract allotted to P., claiming it as his own until he sold it. P. owned an interest in the lands formerly owned by her father continuously from the date of the partition up to the time of her death, which ownership was fully recognized by her husband. There was also evidence that P. exchanged the tract allotted to her with C., which constituted a part of the expressed consideration for the deed from C. to P.'s husband. *Held:* that the evidence showed that the consideration for the conveyance from C. to P.'s husband moved from P., that her recognized interest in the lands left by her father could only have been in the 225 acres conveyed by C. to her husband, and that, therefore, the complainants were entitled to the relief asked.

APPEAL from the Chancery Court of Lee.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed in the chancery court of Lee county, on February 16, 1892, by the appellees, S. T. Nelms, Mrs. Mollie F. Miller, whose maiden name

was Mollie F. Nelms, and Maggie V. Adair, *nee* Maggie V. Nelms, against the appellants, W. H. Kimbrough, Samuel Marshal and Mrs. Fletcher Marshal, the first two being the executors of S. H. Pitts, who died in the month of May, 1891, and the said Kimbrough and Mrs. Marshal being the legatees of the said S. H. Pitts.

The bill was filed to enforce an alleged resulting trust in certain lands described in the bill, about two hundred and twenty-five acres, and averred the following facts, to-wit: That Sarah A. Pitts died in the year 1894, and that the complainants were her sole heirs. That the said Sarah A. Pitts, who was the wife of the said S. H. Pitts, inherited from her father, Hiram Nelms, deceased, an undivided interest in a lot of land, and received a sum of money from the same source. That the said Sarah A. Pitts and the other heirs divided said lands between themselves by drawing lots. That the said Sarah A. Pitts and her husband, S. H. Pitts, exchanged the lot drawn by the said Sarah A. Pitts, for a part of the land (112½ acres) in this suit, and that the said S. H. Pitts bought the other 112½ acres and paid for the same with money belonging to the statutory separate estate of his said wife; and that he took a deed to the entire 225 acres in his own name. The bill was afterwards amended by striking out the above averment, which it was claimed resulted in a trust, and substituting an averment that Sarah A. Pitts exchanged her lot with C. D. Nelms, who was one of the heirs of Hiram Nelms, and is now dead, for his lot (a part of the land in this suit), and bought from the said C. D. Nelms the other part of the land in this suit, paying therefor about four hundred dollars, out of money that belonged to her separate estate, and that in the exchange and purchase the legal title was taken by S. H. Pitts in his own name from C. D. Nelms, "of which fact, the title being so taken, the complainants were ignorant until after the death of S. H. Pitts, and that the reason why they (the complainants) did not investigate the title, was because they knew that S. H. Pitts was entitled to his wife's realty during his life-time."

The respondents in their answer to the bill denied these allegations, required the strictest proof thereof, and averred that S. H. Pitts purchased said lands and paid for them with his own money. They also pleaded

the statute of limitations and the staleness of plaintiff's demand, and also demurred to the bill as amended. The evidence adduced is sufficiently shown in the opinion.

On the final submission of the cause, the chancellor overruled the several pleas of the respondents and their demurrer, and decreed that the complainants were entitled to the relief prayed for. On this appeal, prosecuted by the respondents, this final decree of the chancellor is assigned as error.

A. & R. B. BARNES, for appellant, cited *Lee v. Lee*, 77 Ala. 420 ; *Pollak v. Graves*, 72 Ala. 347 ; *Evans v. English*, 61 Ala. 416.

SAMFORD & SON, *contra*, cited 3 Brick. Dig., 785, §§ 47, 48 ; *Whaley v. Whaley*, 71 Ala. 161 ; *Darden v. Gerson*, 91 Ala. 323.

COLEMAN, J.—S. T. Nelms and others, heirs of Sarah A. Pitts, their sister, who died intestate, filed the present bill to have a resulting trust declared in two hundred and twenty-five acres of land, particularly described, the legal title to which was vested in her husband, Sterling H. Pitts, in his lifetime, through whom the defendants claimed title as devisees under his last will and testament. The equity of complainants' bill is rested upon the averment that the money and lands of Sarah A. Pitts constituted the sole consideration for the purchase of the lands in controversy, and that her husband Sterling H. Pitts, took the legal title in his own name. Sarah A. Pitts died in March, 1884, and Sterling H. Pitts, her husband, died in May, 1891. It is conceded on both sides, that C. D. Nelms, brother of Sarah A. Pitts, at one time owned the lands in litigation, and by deed of conveyance for an express consideration of eight hundred dollars, on the 20th December, 1870, conveyed them to Sterling H. Pitts. To entitle the plaintiffs to the relief prayed for, the evidence should be very clear and satisfactory. Some time prior to September, 1868, Hiram Nelms, the father of complainants and C. D. Nelms and Sarah A. Pitts, died, leaving an estate in reality, which later in the year 1868 was partitioned equally between complainants and C. D. Nelms and Sarah A. Pitts, each receiving one hundred and

twelve and a half acres. The heirs did not execute conveyances or releases to each other, but each took possession of the tract or parcel allotted to them, respectively. The failure to have written evidence of the partition, has caused some of the difficulty in this controversy. It is not controverted that M. V. Adair, one of the complainants and heir of Hiram Nelms, as her allotment received one hundred and twelve and a half acres, which she sold and conveyed, by deed, dated 2d day of December, 1868, to C. D. Nelms for an expressed consideration of three hundred and forty-six dollars. A comparison of the deed from C. D. Nelms to Sterling H. Pitts made in 1870, as stated *supra*, with the deed of Mrs. Adair to C. D. Nelms, leaves no doubt, that of the lands conveyed to S. H. Pitts by C. D. Nelms, 112½ acres were purchased by him from his sister, Mrs. Adair, which she received in the division of the lands of Hiram Nelms as her distributive share. It is a fact of importance to know definitely the parcel of land allotted to Mrs. S. A. Pitts; the complainants contending that she received one parcel, while the theory of the defendants is, that she received another. There can be no doubt that the lands were divided, and with the exception of the widow, S. C. Nelms, the five children each received 112½ acres. The parcels allotted to C. D. Nelms and Mrs. Adair are clearly established, and there seems to be no controversy as to that allotted to Mrs. Miller. Hiram Nelms owned section 14 and the N. W.¼ of section 23 and a portion of seven acres adjacent to and immediately south of section 14, all being in same township and range. C. D. Nelms received 58 acres off and across the south end of section 14, and 54½ acres off and across the north end of N. W. ¼ of section 23 ; Mrs. Adair, 112½ in N. W.¼ of section 23, and just south of the 54½ acres allotted to C. D. Nelms. The widow received her share off the north end of section 14. Mrs. Miller's share ran across the entire width of section 14, and next to S. C. Nelms. There were two more parcels in section 14, between Mrs. Miller and the 58 acres allotted to C. D. Nelms, and these two necessarily fell to S. T. Nelms and Sarah A. Pitts. Prior and up to the date of the deed from C. D. Nelms to S. H. Pitts, C. D. Nelms owned and was in possession of the N. W. ¼ of section 23 and a portion of seven acres adjacent thereto, but not clearly defined and located, and

58 acres off the south end of section 14. After the sale and conveyance to S. H. Pitts, in 1870, C. D. Nelms was in possession of 112½ acres in section 14, and claiming the same as his own, until he sold it to S. C. Nelms, or until his death. The evidence of R. M. Harney, W. F. McConnell and J. H. White, disinterested witnesses, and S. C. Nelms, who can have no pecuniary interest in the result of this suit, clearly shows that C. D. Nelms took possession of and became the owner of the 112½ acres allotted to him and immediately south of Mrs. Miller. A parol agreement between parties for an exchange of lands, executed by the parties, by actually entering upon and taking possession under the parol agreement, is not within the influence of the statute of frauds. *McLure v. Tennille*, 89 Ala. 572. The question then arises, from whom did C. D. Nelms obtain the 112½ acres in section 14? He was never in possession of it, nor did he set up any claim to it except from and after the sale and conveyance to S. H. Pitts. It is not pretended that C. D. Nelms purchased the interest of S. T. Nelms. He must necessarily have acquired the lot of Sarah A. Pitts, and this conclusion, from facts established by disinterested witnesses, coroborates the testimony of complainants, that Mrs. Sarah A. Pitts, in the division, received the lot located next to that of Mrs. Miller and denominated as lot No. 2, and that she sold or exchanged this lot to C. D. Nelms. All the testimony, both that for complainants as well as that for the defendants, shows conclusively that after the purchase by S. H. Pitts from C. D. Nelms, and after C. D. Nelms had acquired lot No. 2, and continuously to her death in 1884, Mrs. S. A. Pitts still owned an interest in the lands formerly belonging to Hiram Nelms, and which had been partitioned among the five children. From whom and what parcel did she acquire? The widow still held and owned the parcel allotted to her. Mrs. Miller held and owned hers. C. D. Nelms became possessed of and owned No. 2. There is no pretense that S. T. Nelms sold or exchanged his interest. If Mrs. S. A. Pitts continued to own an interest in the lands, there was none left, except that conveyed by C. D. Nelms to S. H. Pitts, the husband of S. A. Pitts. That she owned an interest continuously from the date of the division to her death, and fully recognized by her husband S. H. Pitts after her

death, is fully proven, and admitted by the respondents. Their answer is, that after the death of his wife (S. A. Pitts), her husband, S. H. Pitts, their grand-father, "turned the lands back" to her brothers and sisters; but the difficulty here is, to-find the lands he "turned back." There were none that he could "turn back" except the lands in controversy, and these he did not turn back; at least they are now claimed by defendants. Much of the apparent conflict and contradiction in the declarations of S. H. Pitts, sometimes speaking of these lands as belonging to his wife, and at other times claiming them as his own, is explained, when it is considered that from 1870 to 1884, the date of the death his wife, independent of the deed of any conveyance, the legal title of the wife's statutory estate, by operation of law, vested in the husband as trustee and, by virtue of his rights as husband and trustee, he was entitled to the rents and control of the land. On all occasions, during the lifetime of his wife and for some time subsequently, he recognized that his wife owned property in the lands of her father's estate, and the undisputed testimony is reconcilable with no other contention. All of the declarations of S. H. Pitts testified to by different witnesses can not be reconciled, but the weight of the legal evidence as to his declarations tends to the conclusion that the lands in controversy, called in the pleadings and evidence the "Corbett lands," were recognized by her husband as the property. of his wife during her lifetime. After her death, he owned a life estate in them. The bill was filed immediately after his death. The assessments of these lands for taxation were not made by metes and bounds or numbers, but only so many acres in section 14. The complaint in the ejectment suit referred to in the evidence was not introduced in evidence, and the testimony leaves it in doubt as to which particular lot was the subject of that suit. The evidence as to what S. H. Pitts swore on that trial, or whether he was examined at all, is left in such doubt, that not much importance can be attached to it. The evidence is quite voluminous, but after a careful examination we have arrived at the same conclusion as that reached by the chancery court. There is much testimony in the record, to which exceptions were properly taken, but excluding all of this, the com-

plainants have fully made out their case, and are entitled to relief.

Affirmed.