# Roman *v.* Dimmick, *et al.*

*Bill in Equity by Judgment Creditor of Corporation, to enforce Individual Liability of Stockholders.*

1. *Corporation; liability of stockholders as holders of bonds to creditors.*—Where the promotors and incorporators of a corporation pay for the capital stock of the company by turning over to it property at a valuation grossly in excess of its real value, and as a part of the consideration, half of the bonds, which were issued to the amount of the capital stock, were, in accordance with the previous understanding

| | |
|---|---|
| 115 | 233 |
| 118 | 359 |
| 115 | 233 |
| 123 | 374 |
| 123 | 375 |
| s123 | 534 |
| 115 | 233 |
| 128 | 657 |

between the incorporators, issued to the stockholders, who were not to pay and did not pay anything for them, a bill filed by a judgment creditor of the said corporation to fasten a liability upon such stockholders as holders and owners of the bonds so issued to them, is without equity; there being no promise to pay for the said bonds and the ownership of the bonds not creating a liability upon such stockholders as bondholders.

2. *Same*; *payment of subscription for stock in property*; *must not be excessive.*—Under constitutional and statutory provisions (Const. Art. XIV, §§ 6, 7; Code of 1876, § 1805; Code of 1886, § 1662), when a subscription for stock in a corporation is made payable in property, the property must be taken at its reasonable money value; and though a margin will be allowed for an honest difference of opinion as to its value, a valuation grossly excessive, knowingly made, while its acceptance may bind the corporation, is a fraud on creditors, and they may proceed against the stockholders individually as for an unpaid subscription.

3. *Same*; *right of judgment creditor to maintain bill to reach equitable assets.*—A single judgment creditor of an insolvent corporation with a return of execution "no property found," can maintain a bill in equity to subject the unpaid subscriptions to the capital stock in the corporation or other equitable assets of the corporation to the payment of its debts.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. JOHN G. WINTER.

The bill in this case was filed by the appellant, S. Roman against J. W. Dimmick, A. M. Baldwin and G. W. Craik; and sought the enforcement of a judgment in favor of the complainant against the Montgomery Iron Works, of which corporation the respondents in the present bill were stockholders and the holders of bonds, by subjecting the parties respondent to the payment of the difference between the actual value of the property put in as payment of their stock subscription and the amount subscribed, and by holding them liable upon the bonds of the corporation which were in their hands.

The respondents interposed a demurrer and a motion to dismiss the bill for the want of equity. Upon the submission of this cause upon the motion and demurrer, they were sustained, and the bill was ordered dismissed. From this decree the complainant appeals, and assigns the rendition thereof as error.

[Roman v. Dimmick *et al.*]

J. M. & P. W. WHITE, for appellant.—1. The effective operation of the constitutional provision against fictitious increase of indebtedness was self executing, and that to increase the indebtedness without money, labor or property paid or promised, was void. As to stock, it was held that the statute provided means for ascertaining when they were void. But, if stock is issued without money, labor or property paid or promised, there is an increase of indebtedness. The constitutional requirements, superadded to the statutory direction, was made to protect stockholders, the public and corporation creditors from evasions on the part of corporators in watering and placing spurious stock on the market, and increasing their debts. And, when either of the parties look to the provisions of the constitution for protection, it will afford remedies for them all. *Morrow v. Iron & Steele Co.*, 87 Tenn. 262; *Nicrosi v. Irvine*, 102 Ala. 654; *Parsons v. Joseph*, 92 Ala. 403; Const. Art. XIV, § 6; Code of 1876, § 1805; Code of 1886, § 1662; *Elyton L. Co. v. Bir. W. & E. Co.*, 92 Ala. 407.

2. If the property is of a value unconsciously lower than the stock that was issued for it, the stockholders owe for their stock the amount of the difference between the real value and the par value of the stock. Promoters and organizers of a corporation deal with the commissioners to sell and place the stock, and the corporation is bound that the trustees, the commissioners who sold the stock, or took subscriptions for it, acted in good faith; and, if they did not, the corporation is liable to creditors of the corporation, and the persons who subscribed are likewise liable for the stock not paid for. This action is properly brought in a court of equity. Suits in relation to the capital stock of a corporation are triable in equity. *O'Bear Jewelry Co. v. Volfer*, 106 Ala. 220; *Corey v. Wadsworth*, 99 Ala. 68; *Elyton L. Co. v. Birmingham W. & E. Co.*, 92 Ala. 421; *Nicrosi v. Irvine*, 102 Ala. 654.

TOMPKINS & TROY, *contra.*—The bill in this case does not contain equity, and the complainant has not shown that he is competent to maintain the present suit. According to the averments of the bill it is shown clearly that whatever might be the value agreed upon, that it was to be treated as the true value of the property, and the purpose of having that value agreed upon it is clearly

[Roman v. Dimmick *et al.*]

shown was to fix the liability of the subscriber to the corporation in event he failed to deliver the property. That was clearly the only object of that agreement. There is nothing in the statute which indicates in the slightest degree a purpose to make the subscriber liable for the difference between the actual value of the property and the par value of the stock. The subscriber's liability under the statute ends when he conveys the property.

The Constitution says that no stock or bonds shall be issued except for money, labor done, or money or property actually received, and that all fictitious increase of stock or bonds shall be void. There is nothing in that provision that can be construed into requiring property conveyed for either stock or bonds to be actually worth the par value of such stock or bonds; on the contrary, by declaring that only a fictitious increase of such stock should be void, it is clearly shown that it was in the contemplation of the framers of the Constitution that such stock or bonds might be issued of a par value in excess of the actual value of the property and the transaction be a valid one, for it in effect declares that the law has no condemnation of such a transaction unless the discrepancy between the value of the property given and the stock and bonds received shall be so great as to make the issue a fictitious one.

Under just such provisions the issue of stocks and bonds under just such circumstances as those disclosed by the bill in this case have been sustained.—*Memphis, &c. R. R. Co. v. Dow*, 120 U. S. 287; *Peoria, &c. R. R. Co. v. Thompson*, 103 Ill. 187; *Stein v. Howard*, 65 Cal. 616; *Coe v. East & W. R.*, 52 Fed. Rep. 531; *Nelson v. Hubbard*, 96 Ala. 238.

COLEMAN, J.—The appeal is prosecuted from a decree of the court, dismissing complainant's bill, upon the ground that it is without equity. The complainant avers in the bill of complaint, that he is a judgment creditor of the Montgomery Iron Works, a corporation, that execution issued upon his judgment, which was returned "no property found." The bill avers that the defendant corporation is insolvent. The object of the bill is to hold certain stockholders and bondholders, who are made respondents, liable for the satisfaction of his

judgment. The right of complainant to equitable relief against the stockholders and bondholders is based upon the following statement of facts: The respondents, Dimmick and Baldwin and others, were promoters and incorporators of the defendant corporation, and fixed its capital stock at $50,000. The respondents Dimmick and Baldwin each subscribed for five thousand dollars of stock, and Craik for twenty-five hundred dollars; the remainder of the stock was subscribed for by others, who the bill avers are totally insolvent, and for this reason are not made parties defendant. The bill avers that the capital stock was paid for by selling or turning over to the defendant corporation property of an old plant which belonged to or was controlled by the promoters and incorporators, the value of which did not exceed twenty-five hundred dollars, and as a part of the consideration, it was understood, that bonds of the face value of fifty thousand dollars in addition to the stock were to be issued, one-half of which were to be retained by the corporation, and the remaining half, to be issued to the stockholders, that nothing was paid and nothing was to be paid by the stockholders for the bonds issued to them. The conclusion of the pleader from these facts is, that respondents are liable on their subscription for stock to the creditors of the corporation, for the difference between the actual value of the property paid in as capital stock, and the amount subscribed for and received by them. Complainant further concludes that these respondents are liable to creditors of the corporation for the full face value of the bonds received by them, for which they have paid nothing. The bill shows, that the twenty-five thousand dollars of bonds retained by the corporation, have been disposed of in due course of trade, but it avers, that the stockholders who are made respondents have not parted with the bonds issued to and received by them. The bill contains a prayer for general relief.

So far as the bill of complaint seeks to fasten a liability against the respondent owners and holders of the bonds, the bill is without equity. The bill expressly avers that these bonds "were issued and turned over to said parties without pay or promise to pay, except as in the manner stated," &c. It may be that under the averments of the bill, these bonds in the hands of

the original holders, are invalid as claims against the corporation or other creditors, but there is nothing to show a promise to pay anything for them. On the contrary, the parties receiving them did not and were not to pay anything for them. A different principle applies to the subscriptions for stock. The bill avers that the subscriptions for stock were paid for in property, at a valuation double its real money value.

Section 6, Article XIV, of the Constitution of 1875, reads as follows: "No corporation shall issue stock or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock and bonded indebtedness of corporations shall not be increased, except in pursuance of general laws, nor without the consent of the persons holding the larger amount in value of stock, first obtained at a meeting to be held after thirty days notice given in pursuance of law."

Section 1805 of the Code of 1876 reads as follows: "All subscriptions to the capital stock of any company organized or proposed to be organized under the provisions of this article shall be made payable in money, or in labor or property at its money value, to be named in the list of subscription, and in case of a failure to perform the labor, or deliver the property, according to the terms of the subscription, the money value thereof as named in the lists of subscription, shall be paid by the subscribers."

We are aware that in some courts, (*Memphis & C. R. R. Co. v. Dow*, 120 U. S. 287 and others) it has been held, that similar constitutional provisions were intended to protect the purchasers of stock, but the construction placed by this court upon the constitutional provisions and the statutes relative thereto were intended for the protection of creditors of the corporation, as well as purchasers of the stock. This question was reviewed at great length in the case of *Elyton Land Co. v. Birmingham Warehouse & Elevator Co.*, 92 Ala. 407, and the conclusion reached that "when a subscription for stock in a corporation is made payable in property, the property must be taken at its reasonable money value; and though a margin will be allowed for an honest difference of opinion as to its value, a valuation grossly excessive, knowingly made, while its acceptance may bind the cor-

[Hays *et al.* v. Ahlrichs *et al.*]

poration, is a fraud on creditors and they may proceed against the stockholders individually as for an unpaid subscription." See the authorities referred to in the opinion. The same principle was announced in the subsequent case of *Nicrosi v. Irvine,* 102 Ala. 648.

That complainant had the right to file the present bill for his individual benefit, we think there is no doubt. The *Elyton Land Co. Case, supra,* was just such a bill. See also *Hall & Farley v. Henderson,* 114 Ala. 601; Acts of 1894-95, p. 881.

It is unnecessary to consider in the present case the effect of the act of 1894-95 upon the act of 1888-89, p. 94. That the last act (1894-95) is valid and applicable to complainant, who is a judgment creditor, cannot be questioned.—*Harper v. The State,* 109 Ala. 28.

The court erred in dismissing complainant's bill for want of equity.

Reversed and remanded.