# Roman v. Dimmick.

*Garnishment Suit.*

1. *Evidence; error in excluding testimony cured by subsequent admission thereof.*—Error in excluding the testimony of a witness is cured by the subsequent admission of such testimony, and the exclusion thereof furnishes no ground for reversal of the judgment.

2. *Garnishment; contest of answer of garnishee must be made at term of court answer filed*—Under the provisions of the statute, (Code, § 2196), the time allowed the plaintiff in a garnishment suit to contest the answer of the garnishee does not extend beyond the term at which such answer is made, unless the court at such term grants further time; and in the absence of the grant of further time by the court, a contest filed at a term subsequent to the term at which the answer is filed, comes too late and can not be considered by the court.

3. *Same; motion to contest answer of garnishee comes too late after plaintiff has asked for judgment.*—In a garnishment suit, after the garnishee has filed an answer and after the plaintiff, at the conclusion of the oral examination of the garnishee, asks for judgment upon the answer of the garnishee, and the court decides in favor of the garnishee on his motion to be discharged, it is then too late for the plaintiff to file a contest of the answer; since such contest should be made before his motion for a judgment on tne answer.

4. *Same; not improper for garnishee after his discharge to suggest the pendency of other garnishments.*—In a garnishment suit, after the garnishee has been discharged, it is not improper for him, by counsel, to suggest to the court the pendency of other garnishments against him on judgments recovered against the same defendant, which were served prior to the pending garnishment, and to have such suggestions entered on the minutes of the court; such entry of record not being

[Roman v. Dimmick.]

prejudicial to the defendant and being designed only as a matter of precaution against liability in any event for a double suit on the same indebtedness, if ultimately found to exist on the part of the garnishee.

5. *Garnishment; when garnishee not liable as a stockholder in corporation.*—Where upon a judgment against a corporation a writ of garnishment is sued out and served upon one of the stockholders, who answers that he and one of the other incorporators purchased certain designated property, the value of which was fixed by an expert, and conveyed it to the defendant corporation in payment of their stock subscription including the stock owned by the garnishee, and the company accepted the conveyance of said property in full payment of said stock subscription, and such answer is not contested, the garnishee is not liable on his answer; since, as shown thereby, there remained no unpaid subscription, and without proof of consideration, the court could not say that the stock was fictitious or in violation of the constitution or statute, (Art. XIV, § 6; Code, § 1254).

6. *Same; liability as garnishee of stockholder as holder of bonds.* Where the promoters and incorporators of a corporaton pay for the capital stock of a company by conveying to it property at an agreed valuation, and as part of the consideration of such conveyance certain designated proportionate share of the bonds were, in accordance with a previous understanding between the incorporators, issued to such stockholders who were not to pay anything for them, such stockholders are not liable under a writ of garnishment sued out on the judgment recovered against such corporation, from being under promise to pay said bond, and the ownership of the bonds creating no liability over the holders thereof to the corporation.

7. *Same; same.*—The statute authorizing unpaid subscription to stock to be reached under process of garnishment by a creditor of a corporation, without regard as to whether the corporation can maintain suit against the corporation for such subscription or not, (Code, § 2182), has no application to bonds which are issued by the corporation to its stockholders in accordance with an agreement between them, and for which bonds there was to be paid nothing, and there was no promise to pay on the part of the holders thereof; such bonds constituting no part of any unpaid subscription by the holders of stock in said corporation.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. J. C. RICHARDSON.

[Roman v. Dimmick.]

On May 23, 1896, P. W. White made affidavit that at the November term, 1895, of the Montgomery circuit court, the appellant, S. Roman, recovered a judgment against the Montgomery Iron Works for $2,200, and that he believed the appellee, J. W. Dimmick, was indebted to it, and process of garnishment was necessary to collect the debt. On the same day a writ of garnishment was issued directing Dimmick to answer in accordance with the statute at the next term of court. This writ was served May 23, 1896. The next term was in November, 1896; but nothing was done then. At the May term, 1897, the garnishee answered in writing denying any indebtedness.

At the November term, 1898, the garnishee, having been summoned to answer orally, appeared and objected to an oral examination on the ground that he had made a written answer at a previous term denying indebtedness, which was not contested at the term at which it was filed. This was overruled, and he answered orally substantially as follows: There was a corporation in the city of Montgomery known as the Montgomery Iron Works Company, owning a certain lot with machinery and improvements on it which was valued by an expert at $50,000. On July 26, 1886, Dimmick, Baldwin and Chambers bought this and received a conveyance, paying therefor $25,000 in cash and assuming debts amounting to $25,000. Shortly afterwards, a corporation known as the Montgomery Iron Works was organized with a capital stock of $50,000, divided into 500 shares of $100 each. Dimmick subscribed for 90 or 92 shares, and received certificates of stock for 90 shares, amounting to $9,000. On August 20, 1886, Dimmick, Baldwin and Chambers conveyed to the Iron Works all the property of every kind which has been purchased since that date, and now situated on the premises." On the same day the commissioners appointed by the probate judge reported that the capital stock had been "fully paid for in cash and in property at fair and reasonable valuation." This report, Dimmick says, speaks the truth, and he swears that the property was accepted by the corporation, all stockholders consenting, in full payment of the subscriptions to stock. The garnishee

[Roman v. Dimmick.]

could not remember the exact terms of the contract of subscription, though he thought it was in writing, and payable in property, but his subscription of $9,000 was included with the others, and fully paid up by the transfer of property. He paid in cash on the transaction, though he could not fix exactly how, probably on the purchase of the Iron Works Co. property, at first $5,000 in cash, and at another time between $3,000 and $4,000 in cash, which he was compelled to pay over.

In addition to its capital stock, the company issued $25,000 in bonds for improvements, and Dimmick subscribed for and received $5,000 of such bonds. These bonds were also paid for by Dimmick, Baldwin and Chambers conveying the original property purchased from the Iron Works Co. and additional property, it being accepted in full payment at that price, and being pronounced worth that by Judge Clopton, an attorney in Montgomery, under whose advice both the stock and bond transactions were conducted. The original property purchased from the company was not only pronounced by an expert employed to examine it prior to purchase, worth $50,000, but was regarded by garnishee as fully worth that or more.

The plaintiff upon this answer moved for a judgment, and the garnishee asked for his discharge. The court overruled the motion and announced that he would discharge the garnishee; but before the judgment entry was written up, the plaintiff asked leave to contest the answer, which the court declined to allow him to do. After the discharge of the garnishee he asked leave to have noted on the minutes the pendency of prior garnishment suits against him by other plaintiffs in the city court of Montgomery, which was done. Plaintiff then renewed his motion to be allowed to contest the answer of the garnishee, but the court overruled it. There were some rulings by the trial court in excluding certain testimony on motion of garnishee, but it is unnecessary to set apart the facts pertaining thereto in detail, as the court subsequently admitted the evidence so excluded. The present appeal is prosecuted by the plaintiff, who makes the following assignments of error: "1. The court erred in excluding the answer of

the garnishee that he had subscribed for 92 shares of stock in the defendant company. 2. The court erred in not allowing the plaintiff to prove by the examination of the defendant that he had subscribed for 92 shares of the stock of defendant company. 3. The lower court erred in not giving judgment against the garnishee on his answer as asked by plaintiff. 4. The lower court erred in not allowing the plaintiff to contest the answer of the garnishee. 5. The court erred in discharging the garnishee on his answer. 6. The court erred after garnishee had amended his answer, in refusing the right of plaintiff to contest the answer."

GUNTER & GUNTER, for appellant.—The answer of the garnishee must in all cases where its terms are doubtful, receive a construction most strongly against the himself.—8 Encyc. (1st edition), 1208; Waples on Attachment, (2d edition), § 512.

The garnishee showed by his subscription an indebtedness of $9,200. He must, therefore, be charged unless he shows, and the burden is on him, that the debt has been legally discharged. The garnishee did not show a legal and full discharge of his subscription, and the court should, therefore, have given judgment against him. Section 2182 of the Code relieves this case of all the difficulties of the case of *Nicrosi v. Irvine,* 102 Ala. 648. The garnishee disclosed a plain liability of $9,200, and did not show any legal discharge of it.—8 Encyc. of Law, (1st edition), § 1227.

The motion for a judgment on the answer was no waiver of the right to contest. That motion was in the nature of a submission to the court of the sufficiency of the answer to acquit the defendant, and, like a demurrer overruled, there was a right to answer over. There was no judgment of discharge before the plaintiff asked leave to file and tendered the affidavit to inaugurate a contest, and the court denied the right, which is guaranteed by the very words of our statute.—*Lindsay v. Morris,* 100 Ala. 548; Code, § 2196.

After the court had refused to allow the answer to be contested, the garnishee amended his answer, the plain-

[Roman v. Dimmick.]

tiff again offered to contest the answer, and was again denied the right. The rule is that whenever an amendment is allowed, the whole matter is opened up. Suppose the garnishee, in his original answer, had inadvertently or by mistake of any sort, admitted an indebtedness, when there was none, or had denied indebtedness when there was indebtedness, and. had corrected the same by amendment or supplemental answer, is it not plain that it would be a recognition of the pendency of the proceeding, and that the plaintiff would have the correlative right of further examination and contest? Clearly so. The court was in error in refusing the second tender of the affidavit of contest.—8 Encyc. of Law, (1st edition), 1210-11; *Hovey v. Crane*, 12 Pick. 167; *Calkins v. Isbell*, 20 N. Y. 147; *Byrd v. McDaniel*, 26 Ala. 582; *Coltart v. Moore*, 79 Ala. 361.

WATTS, TROY & CAFFEY, *contra*.—Wrongful exclusion of evidence is cured by its subsequent admission.—*McLendon v. Grice*, 119 Ala. 513. The plaintiff can not have judgment unless the defendant could maintain assumpsit against the garnishee.—*Nicrosi v. Irvine*, 102 Ala. 648; *White v. Simpson*, 107 Ala. 393. Without proof of the fact and amount of a judgment against defendant, plaintiff can not have judgment against the garnishee.—*Blair v. Rhodes*, 5 Ala. 648; *Case v. Moore*, 68 Ala. 354; *Brake v. Curd*, 102 Ala. 339; *Birmingham Bank v. Mayer*, 104 Ala. 641; *Lee v. Ryall*, 68 Ala. 354. The right of a creditor to recover from a subscriber to stock is barred in six years from the day the subscription is payable.—*McDonnell v. Ins. Co.*, 85 Ala. 409; Rood on Garnishment, 376.

A wrong reason given by the court for a correct ruling is not ground for reversal.—*Ex parte Hood*, 107 Ala. 520. Failure to contest a written answer denying indebtedness at the term at which it is made entitles garnishee to a discharge.—*Graves v. Cooper*, 8 Ala. 811; *Lockhart v. Johnson*, 9·Ala. 225; *McDaniel v. Reed*, 12 Ala. 615; *Cross v. Spellman*, 93 Ala. 173; *Brake v. Curd*, 102 Ala. 342; *Roman v. Baldwin*, 119 Ala. 257.

Where there is no contest of the written answer at the term at which it is filed, an oral answer made at a sub-

sequent term can not be contested.—*Roman v. Baldwin*, 119 Ala. 257. A motion for a judgment on the answer is a waiver of the right to contest it.—*McCoy v. Williams*, 6 Ill. 584, 593; *Mahoney v. McLean*, 28 Minn. 63; *Davis v. Pawlette*, 3 Wis. 269; *Platt v. Bank*, 17 Wis. 222; 1 Brick. Dig. 883, § 1146; Rood on Garnishments, §§ 362, 389.

HARALSON, J.—1. The 1st and 2d assignments of error are without avail to appellant. If the court erred in excluding the evidence offered in the first instance, the error was cured by its subsequent admission.—*McLendon v. Grice*, 119 Ala. 513, 24 So. Rep. 846.

2. After the garnishee had answered fully on oral examination, the bill of exceptions recites: "This was in substance all of the garnishee's answer, and thereupon plaintiff asked for a judgment upon the answer of the garnishee, and the garnishee asked for a discharge. After argument, the court said he would have to refuse the motion for a judgment, and discharged the garnishee, to which ruling the plaintiff excepted; and thereupon at once and before any judgment entry, and during the term of the court, the plaintiff asked leave to file a contest of the garnishee's answer, and submitted to the court the affidavit of the plaintiff for that purpose, * * * but the court refused to entertain the motion and discharged the garnishee," to which ruling the plaintiff excepted.

The fourth assignment questions the correctness of the ruling of the court in not allowing the plaintiff, at this stage of the proceedings, to contest the answer of the garnishee. This ruling is fully justified. The Code, (section 2196), provides, that "the plaintiff, his agent or attorney, may controvert the answer of the garnishee, by making oath at the term the answer is filed, that he believes it to be untrue, and thereupon an issue must be made up, under the direction of the court, in which the plaintiff must allege in what respect the answer is untrue," etc. The answer of the garnishee, as we have seen, was filed in the cause at the May term of the court, 1897, at which term the plaintiff took no

steps so far as appears, to contest the answer, and it was not until the November term, 1898—the same being the third term after the original answer was filed— that the plaintiff took any further proceeding in the cause, at which term, he made a motion to require the garnishee to answer further and orally, which motion the garnishee resisted.

This court has repeatedly and consistently held, going back, at least as far as 1845, that the time allowed the plaintiff to contest under the provisions of the foregoing section of the Code, and similar provisions in previous Codes, does not extend beyond the term of the court at which the answer is made, unless the court, at the time, gave further time within which the contest may be instituted; and that, without such an order, the garnishee cannot be compelled to join in an issue at a subsequent term unless he has expressly or by implication waived his right to a discharge.—*Brake v. Curd, Stinton Mfg. Co.,* 102 Ala. 339, and authorities there collated.

At the conclusion of the oral examination, as we have seen, the plaintiff asked for judgment upon the answer of garnishee, and garnishee asked to be discharged thereon. The court decided against plaintiff and in favor of garnishee, when plaintiff asked to be allowed to contest garnishee's answer. This the plaintiff had no right to do, even, if his right to contest before he made his motion for judgment on the answer, had not been lost. When he asked for judgment against garnishee on his answer, this was in the nature of a demurrer to the evidence in an ordinary action. After an adverse ruling on this motion, it was too late, to move to contest the answer as being untrue. The plaintiff waived his right so to do.—*Platt v. The Bank,* 17 Wis. 222; *Mahoney v. McLean,* 28 Minn. 63; *Murphree v. City of Mobile,* 108 Ala. 663; 1 Brick. Dig. 883, § 1146.

3. After the garnishe had been discharged, his counsel brought to the notice of the court by suggestion, that in the city court of Montgomery there were pending garnishments against garnishee on judgments recovered against the same defendant by certain named parties, all of which were sued out and served prior to the gar-

nishment in this case, which suggestion, at the request of the garnishee by his counsel, was entered on the minutes of the court. Thereupon, the plaintiff again offered to contest the garnishee's answer, and asked leave to do so, which request was denied. In this there was no error. This entry of record was not prejudicial to plaintiff, and could not have entered into a contest, if allowed, of the garnishee's indebtedness. It was designed as a matter of precaution against liability in any event, for a double satisfaction of the same indebtedness, if ultimately found to exist on the part of the garnishee.—*Montgomery Y. L. Co. v. Merrick*, 61 Ala. 534.

4. The only remaining question is whether or not the garnishee was liable on his answer. Under the facts stated we are of the opinion, he was not liable. He was certainly not liable for any amount remaining due on his stock. He subscribed for $9,000 or $9,200 worth of stock which he paid for, and according to his answer, he got the same amount in stock, though he was indefinite in his recollection whether it was for the one or the other sum. The property transferred was shown to have been worth $50,000, the amount of stock issued. Garnishee and associates gave that for it, and added other property to it. They sold it to the new corporation for $80,000. He also stated, that the propriety of the company's accepting this property for $80,000 was passed upon by Judge Cloption, a practicing lawyer of intelligence and ability, and he approved it. His opinion was, that it was worth the money.

It is well settled by the decisions of this court, that "When a subscription in a stock corporation is made payable in property, the property must be taken at its reasonable money value; and though a margin may be allowed for an honest difference of opinion as to its value, a valuation grossly excessive, knowingly made, while its acceptance may bind the corporation, is a fraud on creditors and they may proceed against the stockholders individually as for an unpaid subscription." *Elyton Land Co. v. Birmingham W. & E. Co.*, 92 Ala. 407; *Nicrosi v. Irvine*, 102 Ala. 648; *Hall & Farley v. Henderson*, 114 Ala. 601; *Roman v. Dimmick*, 115 Ala.

233. And, in the absence of proof as to the value of the consideration, as we have held, the court cannot say that the stock was fictitious, or in violation of Art. XIV, § 6, of the Constitution, or of section 1254 (1662) of the Code.—*Davis v. Montgomery Furnace & Chemical Co.,* 101 Ala. 127.

The garnishee, it is insisted by plaintiff, disclosed in his answer a liability of $9,200 and did not show any legal discharge of it. The answer stated: "We (the stockholders) had inquiry made as to the value of the property and we bought the property on the value fixed by that expert. He reported that it was worth $50,000, and we bought it on that report, and then conveyed it in payment of the $50,000 of subscription, my ninety-two shares included, and the corporation accepted the conveyance of that property in full payment of the $50,000 of stock subscription." If that be true, as on motion to charge garnishee on his answer, it must be taken, then there remained no unpaid subscription on stock to be reached and condemned by the garnishment.

As to charging the garnishee for the bonds he got, we are at a loss to see how they can be reached by garnishment. It may be, as was said in *Roman v. Dimmick, supra,* that these bonds in the hands of the original holders, are invalid as claims against the corporation or other creditors, but there is nothing to show a promise to pay anything for them. On the contrary, it appears, that Dimmick and associates were not to pay anything and they owe the company nothing for them. It is well settled, that in the absence of fraud on the part of the debtor, or fraudulent collusion between him and the garnishee, only such money demands can be subjected by process of garnishment to the payment of the plaintiff's judgment, as the defendant in judgment could in his own name and right recover in an action of debt or *indebitatus assumpsit* against the garnishee.—*Nicrosi v. Irvine,* 102 Ala. 648. Section 2181 of the Code, which authorized unpaid subscription for stock to be reached by garnishment by a creditor of the corporation, without regard to whether the corporation can maintain suit against the stockholder for such subscription or not, has no application to these bonds, since it cannot be pre-

[Musgrove *et al. v.* Gray *et al.*]

tended that they constitute any part of any unpaid sub-
scription of garnishee's stock.  It thus appears, that
neither on unpaid subscription for stock, nor on debt
owing by garnishee to the defendant,—The Montgomery
Iron Works,—could the plaintiff, as the court very prop-
erly decided, have judgment against the garnishee.  He
was properly discharged on his answer,

Affirmed.