# Bonds Brothers *v.* Anniston City National Bank.

### Garnishment.

(Decided November 30, 1916.  73 South. 467.)

Garnishment; Property Subject; Excess Mortgage Foreclosure.— Where by agreement with a defaulting chattel mortgagee a bank attempted to secure a favorable sale of the mortgaged chattels after the foreclosure sale in order to apply any excess above the mortgage debt upon an unsecured note of a member of the defaulting corporation, the note being held by the bank, such excess was not garnishable by creditors of the corporation if no fraud appears; for unless the garnishee has acquired property in fraud of the right of the creditors of the debtor, funds for which the debtor cannot maintain an action against the garnishee are not the subject of garnishment by such creditor.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, Jr.

Action by Bonds Brothers against the Mitchell Transfer Company with garnishment to the Anniston City Bank. From a judgment for garnishee the plaintiff appeals. Affirmed.

(Transferred from the Court of Appeals under Acts 1911, page 450.)

HUGH WALKER, for appellants. JAMES F. MATHEWS, for appellee.

MAYFIELD, J.—The action was begun by appellants, as judgment creditors of the Mitchell Transfer Company, against appellee bank. The process was garnishment on a judgment in favor of appellants against the transfer company, seeking to subject money or funds of the defendant in judgment alleged to be held by the appellee bank, or to be owing, or to become due, from it to the defendant in judgment. The garnishee denied indebtedness or liability to the defendant, and plaintiffs (appellants here) contested the answer. The trial was had before the judge of the Anniston city court, without a jury, and resulted in a judgment discharging the garnishee. From that judgment plaintiffs prosecute this appeal.

The trial court, at the request of the appellants, made a special finding as to the facts, which appear in the transcript as follows:

"On December 31, 1913, the Mitchell Transfer Company, a corporation (defendant in suit in which garnishment writ was issued to garnishee bank), executed to the said Anniston City National Bank a mortgage to secure a debt of $3,114. The property conveyed in the mortgage consisted of mules and horses, vehicles, harness, some farming tools and office furniture. A copy of said mortgage is hereto attached, marked Exhibit A, and made a part of this special finding. The debt matured February 31, 1914. John W. Mitchell was the general manager of the Mitchell Transfer Company. Mrs. Etner C. Mitchell, the wife of John W. Mitchell, was indebted to the bank in the sum of $1,136, due by note dated December 11, 1913, payable January 2, 1914, which was not secured by the mortgage. Default was made in the payment of the mortgage debt, and John W. Mitchell undertook negotiations with various parties to effect a sale of the

mortgaged property without foreclosure, so as to realize enough to pay the bank, and save something over. He was unable to effect such sales. The bank, through James Keith, Jr., one of its officers, also undertook to find purchasers, and finally succeeded in reaching an agreement by which the Houser Transfer Company agreed to buy from the bank certain portions of the property, and Lanford & Co. agreed to buy from the bank certain other portions, the two lots constituting all of the property that was of any practical value.

"There was an understanding between James Keith, Jr., and John W. Mitchell that the bank had succeeded in finding parties who were willing to purchase from the bank, and that the bank would proceed to foreclose the mortgage according to its terms, and that, if the bank was the successful bidder at the sale under the mortgage, the purchase price which the bank should obtain from the two purchasers would go to extinguish the mortgage debt, and the balance would be applied on any other debt Mitchell Transfer Company might owe the bank or on the Etner Mitchell note.

"On the 21st day of March, 1914, the bank took a note for $2,785, due in 60 days, from Lanford & Co., and the Mitchell Transfer Company, on directions from the bank, turned over to Lanford & Co. that portion of the mortgaged property which Lanford & Co. had agreed to buy from the bank. On the same day the Houser Transfer Company gave a note to the bank for $965 and received from the Mitchell Transfer Company, on directions from the bank, that portion of the property which Houser Transfer Company had agreed to purchase from the bank. Those two notes were given and the property delivered subject to the condition and agreement between the purchasers and the bank, that the bank was to proceed to foreclose the mortgage of the Mitchell Transfer Company, and that in the event the bank become the successful bidder at the sale, the purchases were to stand and the notes were to be valid obligations, and that, if the bank did not become the owner of the property through the foreclosure proceedings, then the notes were not to be binding and the sales were not be binding.

"Thereafter, on March 25, 1915, the bank foreclosed the mortgage by public sale, in accordance with the terms of the mortgage, and John Craig bought the property on a bid of $3,114, the face amount of the mortgage debt. Craig was acting for

the bank, paid no money on the purchase, and immediately transferred all his title to the bank. A few days thereafter, on April 3, 1915, the bank entered the purchase-money notes of Lanford & Co. and Houser Transfer Company on its books, and in course of time, before the garnishment proceeding was begun, the notes were paid.

"The bank applied on April 3, 1914 on the Etner Mitchell note, and took a renewal note for the balance of the Etner Mitchell note. This amount of $636 represented the difference between the mortgage debt and the amount of the notes of Lanford & Co., and Houser Transfer Company, the balance being applied by the bank on the extinguishment of the mortgage debt of the Mitchell Transfer Company, to the bank."

We feel no hesitancy in holding that the trial court decided correctly, on the state of facts as found by the court.

With the exception of fraudulent conveyances, garnishment cannot reach any funds, or property, or demands, which the debtor could not recover in an action ex contractu, and prior to the present statute the demand must be payable in money. An unliquidated demand, having no element of contract or right of action founded in tort, is not now the subject of garnishment.— *Cunningham v. Baker*, 104 Ala. 168, 16 South. 68, 53 Am. St. Rep. 27; *Jones v. Crews*, 64 Ala. 368; 3 Mayf. Dig. 892. Hence, unless the garnishee has acquired property in fraud of the rights of the defendant's creditors, funds for which the defendant cannot maintain an action against the garnishee are not the subject of garnishment at the suit of the defendant's creditors.—*Skewes v. Huey*, 122 Ala. 674, 26 South. 1034; *Skews v. Tenn. C. I. Co.*, 124 Ala. 629, 27 South. 435, 82 Am. St. Rep. 214; *Roman v. Dimmick*, 123 Ala. 366, 26 South. 214; 3 Mayf. Dig. 893.

The facts found do not show any fraud on the part of the bank against the creditors of the mortgagor; nor do we find that the facts as they appear of record would support a finding different from that rendered by the learned trial judge.

Surely no one will contend that the mortgagor could recover of the bank the amount received in excess of the mortgage debt, after agreeing with the bank that, if it acquired the property at the foreclosure sale, it might apply the excess, as stipulated between the parties, to satisfy in part debts due it from other parties. If the evidence showed or authorized the finding that this agreement between the bank, the mortgagee, and the mort-

gagor was made with the intent to hinder, delay and defraud the creditors of the mortgagor, then the creditors of the latter could assail it in a court of law or of equity; but there appears in this transcript no sufficient evidence to support such a finding. The law day of the mortgage having passed and the debt being unpaid, and the mortgagee having acquired the possession of the chattels mortgaged, nothing remained to the mortgagor except possibly the right to redeem under certain circumstances.—*Maxwell v. Moore*, 95 Ala. 166, 10 South. 444, 36 Am. St. Rep. 190.

Of course, if the sales of foreclosure, whether publicly or privately made, were simulated or pretended merely, there being no debt due or to become due which was to be paid thereby, the sales would be void, and the purchasers would acquire no title as against the mortgagor's creditors.—*Stuart v. Mitchum*, 135 Ala. 546, 33 South. 670.

Both parties in this case rely upon the decision of this court in the case of *Harmon v. Dothan National Bank*, 186 Ala. 360, 64 South. 621. The case at bar is not ruled by anything decided in that case. The facts in the two cases, and the parties complaining, are entirely different. There the complaint was by the mortgagor, and was to the effect that the mortgagee had defrauded him by sacrificing the property at a pretended public sale, and then actually selling it at a private sale for an amount largely in excess of the mortgage debt. Here both the public and the private sales were open and fair, and were agreed to by all the parties concerned and thereafter ratified. Here again it is the creditors of the mortgagor who are complaining of the actions of the mortgagee, and of actions done at the request of the mortgagor, and of which no party to the foreclosure has ever complained or could complain. As before stated, the creditors can complain or hold this mortgagee liable only in the event the foreclosure was had with the intent to hinder, delay, or defraud the mortgagor's creditors, and the evidence does not justify a finding of such facts.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.