**BUCK CREEK INDUSTRIES, INC., Plaintiff,**

v.

**ALCON CONSTRUCTION, INC., Robert R. Martin Building Co., Inc., Baptist Home for Senior Citizens, Inc., Baptist Home for Senior Citizens, Defendants.**

**Civ. A. No. 75–M–2142.**

United States District Court, N. D. Alabama, S. D.

Sept. 9, 1977.

---

Larry B. Clark, Lange, Simpson, Robinson & Somerille, Birmingham, Ala., for plaintiff.

C. Stephen Trimmier, Rives, Peterson, Pettus, Conway & Elliott, Birmingham, Ala., A. Dwight Blair, Gaines, Hereford & Cleckler, Pell City, Ala., W. B. Hairston, Jr., Engel & Hairston, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

McFADDEN, Chief Judge.

This action seeks damages resulting from the transfer of a construction contract by defendant, Alcon Construction, Inc. to defendant, Robert L. Martin Building Company, Inc. Plaintiff asserts that the transfer was made with the intent to hinder, delay or defraud plaintiff in the collection of its judgment obtained against Alcon in an earlier suit.

On March 19, 1975, Alcon and The Baptist Home for Senior Citizens, Inc. entered into a contract for construction work for a sum in excess of $700,000. The Home made two payments to Alcon on or before May 26, 1975, the date of the transfer, but none thereafter.

On April 2, 1975, in another case, plaintiff Buck Creek obtained a jury verdict and judgment against Alcon in an amount in excess of $68,000, which was reduced to that amount pursuant to a remittitur order entered May 6, 1975. In an effort to collect its judgment, Buck Creek garnished Baptist Home and Martin. On September 15 and October 31, respectively, each answered "not indebted." On October 14, plaintiff moved to require an oral examination with respect to the Home pursuant to Title 7, § 1011, Code of Alabama (1940), and on November 14 so moved with respect to Martin. The examination was had on December 22, 1975, whereupon Buck Creek moved for judgment based on the oral examination.

Plaintiff's motion was overruled by order entered June 28, 1976. The Court overruled plaintiff's motion for reconsideration or alternatively to amend the order.

This complaint was filed on November 14, 1975. A jury verdict of $68,000 against Alcon and Martin was returned on September 17, 1976. Alcon now moves for judgment notwithstanding the verdict or alternatively for a new trial. Martin moves for reconsideration, in the alternative for judgment notwithstanding the verdict or for a new trial.

Defendants contend: (1) that the matter was or could have been litigated in the garnishment proceeding which is accordingly *res judicata*; (2) that only nominal damages could be recovered since the contract was without value; (3) that the transfer was for a valid prior consideration which is an allowable preference and therefore not actionable; and (4) that plaintiff had to prove common law fraud and failed to do so; (5) that the Court improperly failed to instruct the jury on common law fraud.

■ The jury's finding of fraud effectively disposes of the contention that there was prior consideration and a valid preference. A preferential transfer at a fair price is permissible. Fraud vitiates a preference. *Reynolds v. Welch,* 47 Ala. 200 (1872).

The Court is of the opinion that plaintiff was not restricted to a common law theory of fraud which would require specific intent but that it might proceed on the basis of statutory fraud under the Alabama law. In my judgment, the jury charge on fraud was correct within the meaning of § 7, Title 20, Alabama Code, and there was ample evidence to support the jury finding.

The *res judicata* question is whether a judgment creditor is barred from utilizing Section 7 of Title 20, Alabama Code, to sue his debtor and his debtor's transferee for the fraudulent disposition of an asset, where the creditor has previously sought to recover from the transferee using the garnishment procedures as authorized by the Alabama statutes.

Sections 1011 and 1020 of Title 7, Code of Alabama, the necessary starting point in analysis, provides:

> Section 1011. The garnishee must answer under oath according to the terms of the garnishment, and, upon filing, the clerk or register shall give plaintiff and defendant notice, and the garnishee may, if required by the plaintiff, be examined orally in the presence of the court. Any demand for oral examination required by plaintiff after filing of written answer by garnishee must be made by motion filed within thirty days from the date of notice of filing answer.

> Section 1020. The plaintiff, his agent, or attorney, may controvert the answer of the garnishee, by making oath within thirty days after notice of the filing of the answer, that he believes it to be untrue; and thereupon, an issue must be made up, under the direction of the court, in which the plaintiff must allege in what respect the answer is untrue; and if required by either party, a jury must be impaneled to try such issue.

Until 1940, neither of these sections contained its present thirty-day limitation. Section 1011 in its earlier forms contained no time limitation at all, while Section 1020 provided that the answer might be contested "at the term the answer is made." On motion made during that term, however, the issue might be formulated at the term following. *Roman v. Dimmick,* 123 Ala. 366, 26 So. 214 (1899).

Movants contend that the prior garnishment proceeding provided Buck Creek, under Section 1020, the unexploited opportunity for a trial of the issue of the fraudulent transfer, and is therefore *res judicata* precluding a trial here of the same issue.

■ The doctrine of *res judicata* in Alabama law:

> is confined to those cases where the parties to the two suits are the same, the subject-matter the same, the identical point is directly in issue, and the judgment has been rendered on that point.

*Byrd v. Fowler,* 50 Ala.App. 596, 281 So.2d 647, 649 (1973); see also *Gulf American Fire & Cas. Co. v. Johnson,* 282 Ala. 73, 209 So.2d 212, 217 (1968), and *Jones v. Adler,* 183 Ala. 435, 62 So. 777, 779 (1913). *Res judicata* extends to bar matters which, although not actually litigated, might or should have been litigated in a former suit. *Empire Land Co. v. Sanford,* 218 Ala. 318, 118 So. 563 (1928).

Defendants' argument, therefore, has a certain surface attraction. See, *e. g., Brake v. Curd-Sinton Manufacturing Co.,* 102 Ala. 339, 14 So. 773 (1893); *Roman v. Dimmick,* 123 Ala. 366, 26 So. 214 (1899); *Roman v.*

*Montgomery Iron Works,* 156 Ala. 604, 47 So. 136 (1908), purportedly overruled in *Hall & Farley v. Alabama Terminal & Improvement Co.,* 173 Ala. 398, 56 So. 235, 241 (1911); and *Shepherd Motor Co. v. Henderson Land & Lumber Co.,* 213 Ala. 195, 104 So. 334 (1925). This contention, in the Court's opinion, mistakes the sense of these authorities, which were all decided while Sections 1011 and 1020 were in their earlier forms, previous to the amendments of the Code of 1940. The deceptively minor addition of the thirty-day period of limitation makes no Alabama case directly in point. The State courts have yet to examine the doctrine of *res judicata* with reference to the amended sections.

In applying the doctrine of *res judicata,* the cited authorities presuppose a real opportunity: that having evaluated the results of the oral examination, and being still dissatisfied, a plaintiff could go forward under Section 1020 to demand a trial. The earlier forms of Sections 1011 and 1020 clearly supported this presupposition. Until the Code of 1940, there was no stringent time limitation upon their utilization. This presupposition is not realistic today, now that a thirty-day limitation circumscribes a litigant's use of each section. A plaintiff's opportunity for a trial would depend upon his ability to evaluate the adequacy of a written response, to demand an oral examination and, on the basis thereof, to ascertain the desirability of a trial and to request it, all within thirty days of notice of the written response. Common sense compels the rejection of that notion.

Limitations of time inherent in the judicial process itself must often preclude a litigant, from use of Section 1020 by pushing the date of oral examination beyond the thirty-day limitation period. Precisely this appears to have been the experience of Buck Creek, for having timely demanded an oral examination, the Section 1011 hearing transpired some three weeks after the final day on which Buck Creek could have controverted Martin's answer and nine weeks after the final day it could have controverted the Home's. It is not that Buck Creek neglected to utilize Section 1020 in the earlier proceeding; rather, Section 1020 in its amended form was not available to it.

For this reason, the earlier proceeding lacks *res judicata* effect. It has long been the scheme of the garnishment statute that having taken advantage of Section 1011, a litigant should have available the possibility of a trial; and where Section 1020 will not serve, the present action will. The thirty-day limitation periods do not reverse the statutory scheme, and make the sections alternative instead of complementary. Such an interpretation renders Section 1011 useless to any good purpose and a death-trap for litigants. This apparently innocuous change will not support such an inference. Had such a result been intended, the legislature could and would have said so and not left the result to depend on precarious inference.

Movant's difficulty in using Buck Creek's resort to the garnishment statute to foreclose its subsequent action under Section 7, Title 20, is the greater in light of a fundamental principle of this State's jurisprudence. Alabama is a common-law State: Section 3, Title 1, Code of Alabama, and a litigant's right to go to trial is jealously safeguarded by the courts. It is not to be jeopardized by inadvertence or circumscribed by a sidewind, but only by an unmistakable declaration of the legislature. This declaration is unmistakably absent here. In *Weaver v. Hollis,* 247 Ala. 57, 60, 22 So.2d 525, 528 (1945), it was stated that when

courts are called upon to construe a statute . . . they must read the statute in the light of the common law. *Cloverdale Homes v. Town of Cloverdale,* 182 Ala. 419, 62 So. 712 . . . "The presumption is that the legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication, and that it does not intend to overthrow fundamental principles, infringe rights, or depart from a general system of law without expressing its intention with irresistible clearness." *Dun-*

*can v. Rudulph,* 245 Ala. 175, 16 So.2d 313, 314.

The addition of the limitation periods is not of such "irresistible clearness" to mandate a departure from the legislative intent that a Section 1011 oral examination may be followed by a trial, notwithstanding that the amendment may render Section 1020 not always available for this purpose.

 Two other matters were addressed by movants in their treatment of the *res judicata* issue, election and demurrer. In order for an election to arise, remedies must be inconsistent. The garnishment statute and Section 7, Title 20, are not inconsistent and plaintiff in fact had no opportunity to make an election between them.

On the demurrer issue, it is true that a number of cases hold that where a plaintiff has moved for judgment following an oral examination, he is concluded from proceeding to demand a full trial. See, *e. g., Roman v. Dimmick,* 123 Ala. 366, 26 So. 214 (1899); *Terrell v. Nelson,* 199 Ala. 436, 74 So. 929 (1917); *Crowson v. Cody,* 215 Ala. 150, 110 So. 46 (1926); and *Dawson v. Haygood,* 235 Ala. 648, 180 So. 705 (1938).

 The answer of a garnishee must be taken as true, unless contested as provided by statute. *Shepherd Motor Co. v. Henderson Land & Lumber Co.,* 213 Ala. 195, 104 So. 334, 336 (1925), and cases there cited. This is true of an answer under oral examination, which is a mere continuation of the written answer: *First National Bank v. Dimmick,* 177 Ala. 571, 58 So. 658 (1912). The answer of a garnishee, therefore, oral as well as written, is truly said to be "in the nature of pleading." *Jefferson County Savings Bank v. Nathan,* 138 Ala. 342, 35 So. 355, 356 (1903).

It is understandable, then, that a motion for judgment following a Section 1011 oral examination should be likened to "a demurrer to the evidence in an ordinary action." *Roman v. Dimmick, supra.* Such a motion constituted a waiver of further contest, because it amounted to an admission of the facts and inferences relating to the answer: *Terrell v. Nelson, supra; Crowson v. Cody, supra; Dawson v. Haygood, supra.* And

this was so for the purpose, not only of the demurrer, but of adjudication on the merits, as well: 5A Moore's Federal Practice, ¶ 50.-03[3], and cases cited above. A motion for judgment following a Section 1011 oral examination effectively foreclosed subsequent trial.

 This has of course changed. By Rule 7(c), Ala.R.Civ.P., demurrers to pleading are expressly abolished, and this the courts have taken to extend to abolition of demurrers to the evidence, as well. "Should a federal court be confronted with a demurrer to the evidence," to which Buck Creek's motion for judgment on the oral answer is comparable (*Roman v. Dimmick, supra* ), "unless State practice indicates that the moving party intends something different, it should be treated as a motion for a directed verdict": 5A Moore's Federal Practice, ¶ 50.03[3].

 Demurrers having been abolished under State practice, there can be no contention that the action for judgment on the answer was intended to admit the facts and foreclose further contest with respect thereto. The office of a motion for directed verdict under either Alabama practice (Rule 50, Ala.R.Civ.P.) or under federal practice (Rule 50, Fed.R.Civ.P.) is well known and clearly does not preclude the moving party from going forward if the motion is denied. It is not the equivalent of a demurrer to the evidence which constituted a final binding admission of the facts and forever precluded further controversy with respect thereto. The Court is of the opinion that the Federal Rules would control, but looking to State practice in accordance with Professor Moore's caveat the result is the same.

Movants contend that an action may not be maintained for fraudulent conveyance under Section 7 of Title 20, Alabama Code, unless the property conveyed was subject to execution by the plaintiff creditor.

Significant reliance is placed on *Brown v. Andrews,* 288 Ala. 111, 257 So.2d 356 (1972), for the proposition that a creditor could not set aside a fraudulent conveyance of a contingent remainder since a creditor could not

execute on a contingent remainder. From this it is reasoned that in no circumstances will a creditor be allowed to attack a fraudulent conveyance unless the property conveyed was subject to execution by a creditor. This is a misconception of the law. The issue before the Court in *Brown* was a declaratory judgment action by judgment creditors to determine the rights of the judgment debtors in a piece of real property and to have the property levied upon and sold in satisfaction of their judgment. The debtor there held a life estate in a one-half undivided interest in the property and a contingent remainder in the whole. The debtor and his wife conveyed the real property to a straw man who in turn reconveyed a fee simple title to the debtor's wife. The creditors sought to determine the nature of the interest owned by the debtor upon which execution could be levied contending that the conveyance to the straw man was void. The Court was concerned with a part of Section 519, Title 7, Alabama Code of 1940, which reads:

> Execution may be levied:
> on real property to which the defendant has a legal title, or a perfect equity . . . or in which he has a vested legal interest, in possession, reversion, or remainder, whether he has the entire estate, or is entitled to it in common with others.

The Court held that contingent remainders were not among the estates in real property subject to levy and sale under execution as provided in Section 519, Title 7, Alabama Code of 1940. Accordingly, the contingent remainder held prior to the fraudulent conveyance (as found by the trial court) was not subject to levy and sale under execution. Therefore the creditors suffered no harm from the conveyance and could not complain thereof. Basic to the Court's holding was a determination of the estate held by the judgment debtor, Andrews, which turned on the kinds of estates in real property permitted under the law of Alabama.

Joint tenancies with right of survivorship were permitted under the common law. The State of Alabama undertook to abolish

them by statute in or about 1833 (Aiken's Digest, 1833). In 1852 the statute read:

> When one joint tenant dies before the severance, his interest does not survive to the other joint tenants, but descends and vests as if his interest had been severed and ascertained.

This meant that there could be no joint tenants with right of survivorship, but only tenants in common in which each tenant's interest was owned in fee and subject to his debts and capable of being passed on by testate or intestate succession. In 1945 the following proviso was added:

> provided, however, that in the event it is stated in the instrument creating such tenancy, that such tenancy is with right of survivorship, or other words used therein showing such intention, then upon the death of one joint tenant, his interest shall pass to the surviving joint tenant or tenants according to the intent of such instrument.

The analysis in *Brown* was explicitly based on *Bernhard v. Bernhard,* 278 Ala. 240, 177 So.2d 565 (1965), the first definitive exposition of Section 19, Title 47, Alabama Code, as it exists today.

The question before the Court in *Bernhard v. Bernhard, supra,* was whether the 1945 addition of a right of survivorship brought joint tenancies back in. The Court found that it did not. There was still but one principal form of concurrent ownership in Alabama, tenancy in common. The addition of a right of survivorship was construed as cutting down the interest of the cotenants to a life estate, while at the same time conferring on them contingent remainders in the whole.

The construction has since been superseded: *Nunn v. Keith,* 289 Ala. 518, 268 So.2d 792 (1972); but before it was, *Brown v. Andrews, supra,* was decided. It had been held that contingent remainders are not subject to levy and sale under execution: *Wright v. City of Tuscaloosa,* 236 Ala. 374, 182 So. 72 (1938); *Shrout v. Seale,* 287 Ala. 215, 250 So.2d 592 (1971). Combining the *Bernhard v. Bernhard* and *Shrout v. Seale* lines of authority, in *Brown v. Andrews* the

Court deduced that of the two interests held by a joint tenant (or tenant in common) with right of survivorship—a life estate, and a contingent remainder in the whole—only the life estate was subject to execution. The Court further held that Section 7, Title 20 applied only to the life estate in cotenancy, and not to the contingent remainder.

This holding could not have been otherwise. Section 7 is declaratory of the common law, and of generally recognized equitable principles: *Carter v. Castleberry,* 5 Ala. 277, 279 (1843); *Fleming v. Kirkland,* 226 Ala. 222, 146 So. 384, 386 (1933). It applies in instances of constructive trust. *Dickinson v. National Bank of Republic,* 98 Ala. 546, 14 So. 550, 552 (1893); *Cottingham v. Greely-Barnham Grocery Co.,* 129 Ala. 200, 30 So. 560, 562 (1900); *Metcalf v. Arnold,* 132 Ala. 74, 32 So. 763 (1902); *First National Bank v. Love,* 232 Ala. 327, 167 So. 703, 710 (1936). A trust requires an extant proprietary interest, but the contingent remainder in *Brown v. Andrews,* represented no property subject to being held in trust. Accordingly, there was no subject matter on which Section 7 could have operated.

The contingent remainder represented no "vested" interest to satisfy Section 519, Title 7. Nor did it present any "estate or interest in real or personal property" to attract Section 7, Title 20. For the same reason, then, that there could be no execution on the contingent remainder, Section 7 could not be used to set aside its transfer; namely, the lack of a present interest in the nature of property on which either statute could operate.

But movants would have it that in *Brown v. Andrews,* Section 7, Title 20, was not applied *because* the execution statute was not. It is contended that since execution could not be had on the executory contract the subject of this suit, Section 7 cannot be used to set aside as fraudulent Alcon's transfer thereof to Martin.

This amounts to a contention that in no case can Section 7 be called in aid to defeat the fraudulent disposition of an interest in property not subject to execution. Mortgages, however, are not subject to execution. *White v. Gibson,* 221 Ala. 279, 128 So. 784 (1930). A mortgage is not subject to execution because the legal estate should run with the debt for which it stands security: *Morris v. Barker,* 82 Ala. 272, 2 So. 335, 336 (1886). And yet transfers of mortgages are avoidable when made with fraudulent intent: *Dutton v. Lindler,* 238 Ala. 363, 191 So. 210 (1939). This demonstrates the frailty of the general principle on which movants rely. A debt, being a chose in action, is explicitly exempted from execution by Section 519 of Title 7. Proprietary interest in the form of debt is not without the protection afforded creditors by Section 7. This is amply demonstrated by the cases cited above and by *Hall & Farley v. Alabama Terminal & Improvement Co.,* 143 Ala. 464, 39 So. 285, 288 (1905), which hold that choses in action are within the ambit of Section 7.

The Court is of the further opinion that movants' mistake the foundation of the decision in *Brown v. Andrews, supra.* "Andrews' contingent remainder," it was held, "prior to the fraudulent conveyances, could not have been subject to levy and sale under execution," the remedy his creditors sought (288 Ala. at 115, 257 So.2d at 359). Nor, as evidently, could the contingent remainder have generated assets which would have been so subject. In the circumstances of the case, then, Andrews' creditors "cannot complain about its conveyance" and apply Section 7, for "it is only those who are injured by the fraudulent transaction who can complain." (288 Ala. at 115, 257 So.2d at 359).

The creditors in *Brown v. Andrews* could not complain, because they were not injured. They were not injured because there was not transferred an asset which, prior to the fraudulent conveyances and apart therefrom, could have enured to their benefit.

It is otherwise here. The jury found Buck Creek damaged in the amount of $68,000. The executory contract, the

176

benefit of which passed from Alcon to Martin, generated assets which plaintiff could have applied in satisfaction of its judgment debt. From this fact arose the possibility of a transfer in fraud of the creditor, and this possibility the jury found to have been exploited.

The Court is accordingly of the opinion that the post trial motions are due to be overruled.