# Montgomery Iron Works, *et al.* *v.* Roman.

*Bill by Creditor of Corporation to Require Stockholders to Pay Balance due on Subscription to Stock.*

(Decided June 30, 1906. 41 So. Rep. 811.)

1. *Corporations; Stockholders; Transfer of Property.*—Defendants purchased the property of another company for $25,000, agreeing to pay, in addition, certain debts of the company amounting to about $4,000. The consideration stated in the deed transferring the property to them, they procured to be $50,000, and they subscribed thereafter, $50,0000 to the stock of the new company, which they paid by executing a deed to the property purchased from the other company, and were to receive, in addition to their stock, $30,000 of an issue of bonds

[Montgomery Iron Works, *et al.* v. Roman.]

to the amount of $50,000, to be secured by a deed of trust on the property of the new corporation. Of this issue they received $25,000 of bonds. On a sale of the property under the deed of trust the bondholders realized only 20 per cent. of the amount due on their bonds. The evidence showed that $50,000 was full value for the property conveyed to the new company. Held, that as the evidence showed a sale of the property to the new company for $80,000, which was to be paid for by $50,000 of the stock and $30,000 of bonds, the reception of the bonds at a later period does not alter the fact that it was one and the same transaction, and for this reason the stockholders were not, at the suit of a creditor of the corporation, entitled to have the entire value of the property applied as a payment on the stock.

2. *Same; Actions by Creditors; Limitations.*—The statute of limitations does not begin to run in favor of stockholders for unpaid subscriptions to stock, at the suit of a creditor of the corporation, until judgment against the corporation and a return of an execution *nulla bona.*

2. *Judgments; Conclusiveness; Res Adjudicata.*—After judgment against the corporation and execution returned unsatisfied, plaintiff sued out writs of garnishment against certain stockholders for unpaid subscription, as authorized by § 2182, code 1896. The stockholders answered denying indebtedness, and no contest being filed, garnishees were discharged, which judgment was reserved on appeal, after which one of the stockholders was discharged with plaintiff's consent, and two others were fully examined touching their liability. One of these was discharged and the judgment affirmed on appeal, and plaintiff took nonsuit as to the other; Held, that as to all the garnishees, except the one against whom the non suit was entered, the judgment of discharge was res adjudicata as to plaintiff's right to enforce their alleged liability by bill in equity under § 823, code 1896.

APPEAL from Montgomery City Court.
Heard before Hon. A. D. SAYRE.

This was a bill filed by Sigmund Roman against the Montgomery Iron Works and certain stockholders thereof alleged to be solvent, and not filed against certain other stockholders on account of their alleged insolvency. The case made by the bill is the organization of the corporation, the fixing of the capital stock at $50,000, and

the paying of said stock by a delivery to the corporation of certain land, houses and machinery, alleged to be worth, then and now, not more than $25,000, and the issuance of bonds for $50,000, running 10 years, with interest at the rate of 8 per cent., secured by a trust deed on the property of the corporation, with one Hannon as trustee, and with the rights and power of foreclosure usual in such trust deeds on the failure to pay interest coupons attached to the bonds. The bill further alleges that Dimmick, Baldwin, and Craik are the only solvent stockholders; that Dimmick subscribed $5,000 to the capital stock, Baldwin $5,000, and Craik $2,500; and that each had paid only one-half of their subscription. The bill further alleges: That of the $50,000 worth of bonds issued $25,000 were put in circulation as follows: To Dimmick, $5,000; to Baldwin, $5,000; to Craik, $2,500; to Chambers, $5,000; to Bibb, $7,500. That these bonds were issued and turned over to the above-named parties without pay or promise to pay, without any labor being done, and without money or property actually received for them. That it was a fictitious increase of indebtedness of the corporation. The transfer by all these parties of these bonds before they were due, and the liability of the parties named to the creditors of the corporation for the money value of said bonds, which is alleged to be of the par value of $100 each. The bill further alleges that the complainant was the holder, for value and without notice of the fraudulent issue of the same, of bonds to the amount of $2,200, which he alleges he has filed with the trustee under the deed; but, as the assets cannot pay more than 30 or 35 cents on the dollar, this bill is introduced against the defendants for the purpose of having them account for the balance due on their subscription to the stock of the corporation and for the value of the bonds. The bill alleges a judgment in favor of the complainant against the Montgomery Iron Works, an execution thereon, and a return of "No property found." The prayer is for general relief, for service, and for an accounting against Dimmick, Baldwin, and Craik

for the balance due on their stock subscription, and for the amount due by them on the bonds. Demurrers were filed to the bill, and motion to dismiss it for want of equity, which were overruled. Afterwards the defendants moved to require the complainant to elect whether he would proceed in this cause by bill herein filed or with the garnishment suit alleged to be pending in the circuit court in Montgomery county issued on a judgment obtained by complainant against the Montgomery Iron Works in which these defendants were garnisheed. The court required them to elect. The defendants answered the bill, incorporating therein pleas of the statute of limitations of six years, and in said answer each defendant set up as bar to the action a garnishment writ sued out at the instance of the complainant in this bill on a judgment obtained by him against the Montgomery Iron Works for the amount he seeks to recover by this bill, the service of garnishment upon each defendant, and the answer of the garnishee thereto denying indebtedness, and averring that no contest was instituted testing the answer denying indebtedness. The other facts sufficiently appear in the opinion.

THOMAS H. WATTS and HORACE STRINGFELLOW, for appellants.—No brief came to the Reporter.

GUNTER & GUNTER, for appellees. No brief came to the Reporter.

SIMPSON, J.—From an examination of the testimony we find that there is no controversy about the facts that the property of the Montgomery Iron Works Company was purchased by the promoters of the new company for $25,000, with probably an additional agreement to pay certain debts of that company, which are stated to be $3,000 or $4,000; that said promoters had the amount of the consideration stated in the deed to them as $50,000; that said promoters subscribed for $50,000 of the stock of the new company, and paid for the same by conveying said property, and as a part of the agreement were

[Montgomery Iron Works, *et al.* v. Roman.]

to receive, in addition to the $50,000 of stock, $30,000 of an issue of bonds to the amount of $50,000, which were to be secured by a deed of trust on the property, and they did receive $25,000 of said bonds. Afterwards the property was sold under the deed of trust, and the bondholders realized only about 20 per cent. of the amount due on their bonds. There is a good deal of testimony as to the real value of the property which was conveyed to the company, and, taking all of the testimony. we think that $50,000 would be a full estimate of its value.

It is contended by appellants that the bonds were not received until some time after the organizattiton of the corporation; consequently, that the whole amount of property conveyed should be applied to the payment of the stock, and that, whatever liability there may be on account of the bonds, it cannot be recovered in this action under the previous decision of this case.—*Roman v. Dimmick,* 115 Ala. 233, 22 South. 109. This position is not tenable, because it is testified to by the parties themselves that the property was sold to the company for $80,000, which was to be paid for by $50,000 of the stock and $30,000 of the bonds, so that the time of the actual issue of the bonds does not alter the fact that their reception was a part of the original transaction. If a party owes $50,000, and conveys property worth $50,000 with a $25,000 mortgage on it, he certainly has paid only $25,000 of the debt. So in this case, even at the valuation mentioned, the parties pair only 50 per cent. of the par value of their stock.

There is no merit in the pleas of the statute of limitations, as the statute did not commence to run as to these parties until the judgment and return of *nulla bona* (*Vaughn v. Ala. Nat. Bank,* 42 South. 64), and the judgment of the city court was correct in holding that the pleas setting up the foreclosure proceeding were "patently insufficient."

It is next insisted. that the liability of the respondents on account of their stock subscription is res adju dicata, having been determined in the previous proceedings by garnishment, in which the parties as garnishees

were discharged. It is replied that, because there was no contest of the answer of the garnishees, there were no determination of the fact as to whether the respondents were liable for the balance on their stock, but only whether on the facts disclosed in the answer, there was an indebtedness. There is no dispute about the proposition that, when a matter between the same parties has been decided on its merits by a court of competent jurisdiction, it is res adjudicata in all future proceedings between the same parties, and this court has said "the parties must be the same, the point must be diretcly in question, and the judgment must be rendered on that point."— *Gilbreath v. Jones,* 66 Ala. 129, 132. But in the same case, and others, the court holds that "judgments are final and conclusive between the parties; when rendered on a verdict on the merits, not only as to the facts actually litigated and decided, but that they are equally conclusive upon all the facts which were necessarily involved in the issue. In a subsequent case this court, while adhering to the former definition of the doctrine, states that "the inquiry is not what the parties actually litigated, but what they might and ought to have litigated, in the former suit." And in that case, in which a former decree to compel a settlement of an administration was pleaded, and it was replied that the "issue" was not the same, this court goes on to say: ."The main controlling issue in the former suit was the liability of the appellant to account for his administration. * * * We do not inquire whether the former bill was skillfully drawn. * * * A party cannot obviate the force and effect of a judgment against him by invoking his negligence or unskillfulness in pleading. * * * If the former bill was, as is now insisted, so defective in its frame that the appellee could not have obtained full relief, the duty of amendment rested on her. To suffer her to speculate on the chances of obtaining a favorable decree on insufficient pleading; and, after an adjudication against her on the merits, to assail it because of the insufficiency of the pleading, would be manifestly unjust, and would encourage negligence and pro-

tract. litigation. A judgment is conclusive of the entire subject-matter of controversy, of all that properly belongs to it, or that might have been litigated and decided."—*Tankersly v. Pettis,* 71 Ala. 179, 186, 187. In a later case this court said: "A judgment is conclusive against every defense that might have been made against it, whether pleaded or not." See, also, *Board of Com. v. Cross,* (N. M.) 73 Pac. 615; *Withers' Adm'r v. Sims,* 80 Va. 651; *Francis v. Wood,* 81 Ky. 16; *Hardwick v. Young,* (Ky.) 62 S. W. 10; *Le Guen v. Gouverneur,* (N. Y.) 1 Am. Dec. 121; 1 Herman on Estoppel, p. 548, § 456, 457; Id. pp. 551, 552, § 459; Id. p. 312, § 364; *Wood v. Wood,* 134 Ala. 557, 565, 566, 33 South. 347; 24 Am. & Eng. Ency. Law, 795, note; Id. p. 814; *Parkes v. Clift,* 9 Lea (Tenn.) 524; *Oman v. Bedford Bowling Green Stone Co.,* 134 Fed. 64, 67 C. C. A. 190; *Rowell v. Smith,* (Wis.) 102 N. W. 1.

Our statutes and decisions provide two ways of subjecting a stockholder to liability—one by bill in equity (Code 1896, § 823), and the other by garnishment (Code 1896, § 2182). In this case the judgment creditor first proceeded by garnishment. Since the enactment of our statute permitting the process by garnishment against a stockholder, without regard to whether a suit could be maintained by the corporation, the issue is the same, whether the proceeding be by garnishment or in equity, to-wit, "whether the garnishee is indebted to the debtor in such form as that the debt can be condemned to the satisfaction of the plaintiff's judgment."—*Randolph v. Little,* 62 Ala. 396. The plaintiff, having brought the parties in by garnishment, had the right to a full investigation as to the liability of the garnishees, and, if he chose not to contest the answer, or to take other means within the time prescribed by statute to determine the very issue for which he had summoned them; but permitted the matter to go to a final determination on the merits simply on the answer of the garnishee, the matter of indebtedness and liability vel non is res adjudicata and cannot be again litigated in this proceeding between the same parties. That would be speculating on the chances, as stated in cases supra.

[Montgomery Iron Works, *et al.* v. Roman.]

We take the statements in the agreement of the parties as to the disposition of the garnishment proceedings, not only because this is the case made out by both parties to this case, but because the seeming discrepancy between said agreement and the transcript from the record of the court may be explained by the fact that the transcript does not purport to set out all the orders and decrees in said cases, but only those referred to as exhibits in the agreement, and it is not an unusual custom in some of the court to retain the style of the case just as it was at first, notwithstanding some of the garnishees may have been discharged. It appears from the agreement on file in this case that the complainants sued out garnishments against the respondents, Dimmick, Baldwin, and Craik, that answers were filed denying indebtedness and, no contest being filed, said garnishees were discharged, December 23, 1897, and, by consent said order was set aside on December 30, 1897, a motion was made to require them to answer orally, which was refused, and the garnishees discharged again. On appeal this judgment was reversed, and the cases restored to the docket, and at the November term, 1898, the garnishee Craik was discharged "with the consent of the plaintiff." Dimmick and Baldwin answered orally, were examined and cross-examined on all the matters pertaining to their liability, and there was a judgment of the court discharging the garnishee Dimmick, which judgment was affirmed by this court. A paper was filed contesting the answer of Baldwin, who moved for his discharge, and his motion being overruled, Baldwin appealed to this court, and the appeal was dismissed because no final judgment had been rendered, and on May 28, 1900, the plaintiff took a nonsuit in the cause against Baldwin as garnishee. As between plaintiff and the garnishee the judgment of discharge is res adjudicata.—Rood on Garnishment, §§ 202, 211; *Henderson v. Hall,* 134 Ala. 455, 510, 511, 32 South. 840, 63 L. R. A. 673. From what has been said it will appear that the court holds that the plea of res adjudicata should have been sustained as to the garnishees Dimmick and Craik; but a dismissal of a suit, by taking a nonsuit,

is not a judgment on the merits.—*Beadle v. Graham's Adm'r*, 66 Ala. 99. Hence the plea of res adjudicata was properly held to be not sustained as to the garnishee Baldwin. As said by this court in this case, after the nonsuit, "he stands now, as to his legal rights, where he stood before the garnishment."—*Baldwin v. Roman*, (Ala.) 31 South. 596.

As to the defendants J. W. Dimimck and G. W. Craik the decree of the court is reversed, and a decree will be rendered sustaining the plea of res adudicata; and as to the defendant A. M. Baldwin the decree of the court is affirmed.

Reversed and rendered in part, and in part affirmed.

WEAKLEK, C. J., and HARALSON and ANDERSON, JJ., concur. TYSON, J., not sitting. DOWDELL and DENSON, JJ., dissenting on the question of res adjudicata as to Dimmick and Craik, being of opinion that the doctrine of res adjudicata does not apply in case of discharge of a garnishee on answer when there has been no contest of such answer.