# Hall & Farley *v.* Alabama Terminal & Improvement Co., *et al.*

*Bill by Judgment Creditors to Subject Equitable Assets of an Insolvent Corporation to the Payment of Their Debts.*

(Decided June 29, 1911.   56 South. 235.)

1. *Corporations; Creditor's Action; Remedy; Fraud.*—Upon return of execution nulla bona, a bill in equity may be maintained by a judgment creditor of an insolvent corporation to reach amounts alleged to be due the corporation from its original stockholders on unpaid stock subscriptions, and fraud in the transfer or withholding the assets from the creditors is not necessary to equity jurisdiction.

[Hall & Farley v. Alabama Terminal & Improvement Co., et al.]

2. *Same; Creditor's Action; Adequate Legal Remedy.*—The jurisdiction of a court of equity to subject the indebtedness of the stockholders on their unpaid stock subscription to the payment of judgments against an insolvent corporation after execution returned nulla bona, is founded upon the inadequacy of the legal remedy, and not on fraud vel non, and the inadequacy of the legal remedy is the better test of equity jurisdiction in such cases.

3. *Same; Stockholder's Liability; Fraud.*—Where a corporation purchases shares of its own capital stock in an attempt to discharge the liability of its original stockholders on unpaid subscriptions by the use of assets of the corporation, there is a fraud on the creditors.

4. *Same; Effect of Transfer; Bona Fide.*—Where a subscriber to the capital stock of the corporation, while the corporation was solvent, and while a balance was due on his subscription, transferred his stock in good faith to other stockholders who were solvent, and who, as part of the considerations for said transfer, assumed the liability to the corporation for the balance due, and with full knowledge of all the facts the corporation accepted the purchasers in the place of the original subscribers as the owners of said stock, and agreed to look to them for the balance due, such original subscribers were discharged from any liability for a fraud upon a subsequent creditor resulting from transactions between the corporation, and the purchasers of his stock, since a subsequent creditor cannot complain of the disposition of the property by a corporation unless such disposition was made with the intent to hinder, delay or defraud subsequent creditors, and actually had that effect.

5. *Same; Burden of Proof.*—Where subscribers to the capital stock of a corporation have transferred their stock in good faith to purchasers who have been accepted by the corporation, a subsequent creditor of the corporation who seeks to enforce the former's liability to the corporation on the grounds of fraud in the transfer has the burden of proof.

6. *Same; Effect of Transfer.*—Where the purchaser of stock agrees expressly to assume all the transferor's liability thereon, and when such agreement is acceded to by the corporation on making the transfer, the rule that a stockholder. on a bona fide transfer of his stock, is only discharged from liability as to future calls for payment on stock, and not from liability for amounts due upon previous calls, has no application.

7. *Same; Powers; Purchase of Own Stock.*—Unless so authorized, a corporation may not buy its own capital stock.

8. *Same; Capital Stock; Nature of Property in Shares.*—Stock in a corporation is only evidence of the right of the holder or owner to share in the proceeds of the corporation's property, and a share of stock only represents an aliquot part of the corporation's property, or the right to share in the proceeds to that extent when distributed according to law, and equity.

9. *Same; Transfer of Shares; Registration.*—Section 1262, must be construed with sections 1263 and 1265, Code 1907, and is for the protection of creditors of and purchasers from the stockholders. and not for creditors of the corporation; hence a failure to register a bona fide transfer will not render the transfer void as to creditors

of the corporation so as to entitle them to sue the transferor to recover on unpaid subscriptions on the stock.

10. *Same; Officers; Representation; Ratification.*—Where a corporation, without express authorization at a regular meeting, leaves the entire management of its affairs to its president, and the president assents to a transfer of stock by the subscribers to the capital stock, on which a balance is unpaid, and accepts the purchases instead of the subscribers, as owners of the stock, and liable for the unpaid balance, such acts, when ratified, become the acts of the corporation as they were such acts as could have been regularly authorized.

11. *Same; Officers; Nature of Office.*—So far as the creditors of the corporation are concerned, the directors of the corporation have the right to leave to the president the entire management and discretion as to the transfer of stock of a subscriber, on which a balance is unpaid, and as to accepting the purchaser as owner of the stock and liable for any unpaid balance, as the officers of the corporation are trustees for the stockholders and not for the creditors.

12. *Appeal and Error; Review; Questions Presented.*—Where it affirmatively appears from the record that all of the testimony of witnesses on their several examinations is not set out, any difference in their testimony on different examinations cannot be considered on appeal with reference to their credibility.

13. *Depositions; Examination without Order; Waiver.*—By cross examining the witnesses without objection, the adversary party waived the fact that the witnesses were examined after their depositions had been taken without an order of court first obtained.

14. *Same; Suppression.*—Whether depositions should be suppressed, because taken without special order is discretionary with the trial judge according as he thinks the right of the parties would be best subserved.

15. *Judgment; Estoppel of.*—Since there should be an end to litigation the doctrine of estoppel by judgment is not disfavored.

16. *Same; Pleading.*—Where a creditor sought to reach sums alleged to be due to an insolvent corporation on their unpaid stock subscription, a plea in estoppel or defense, by such stockholders, that a former judgment was rendered in a suit by such creditor against respondents as garnishees of the same indebtedness or chose in action in favor of the respondent, after its answer was contested and after a trial and determination of the case on its merits, is sufficient as to its averments.

17. *Same; Burden of Proof.*—The burden is upon the respondent to prove a special plea of res judicata as alleged.

18. *Same; Conclusiveness; Requisites as Estoppel.*—The judgment of a court of concurrent jurisdiction directly upon the point is a plea in bar, or is evidence conclusive, between the same parties upon the same matter directly in question in another court, but in the absence of any one of these ingredients, the defense fails.

19. *Matters Concluded.*—A judgment is conclusive between the same parties when rendered on a verdict on the merits not only as to the facts actually litigated and decided, but as to all the facts

necessarily involved in the issue; and although a particular matter is not necessarily involved in the issue, yet if the issue is broad enough to cover it, and it actually arose and was determined, it may then be connected with the record by evidence aliunde.

20. *Same; Present Case.*—Held by an equally divided court in a subsequent proceeding in equity that the judgment therein was res judicata of complainant's right to recover in that proceeding.

APPEAL from Birmingham City Court.

Heard before Hon. A. D. SAYRE.

Bill by Hall & Farley as trustees, against the Alabama Terminal and Improvement Company and others, to subject equitable assets of the insolvent corporation to the payment of certain judgments, execution thereon being returned "no property found." Decree for respondent and complainant appeals. Affirmed.

GUNTER & GUNTER, and J. M. CHILTON, for appellant.

ROBERT L. HARMON, for appellee.

MAYFIELD, J.—The bill in this case is by the judgment creditors, to subject equitable assets of an insolvent corporation to the payment of their judgments, after the return of execution, "No property found." The particular assets sought to be subjected are debts or choses in action alleged to be due the insolvent corporation from its original stockholders, for their unpaid subscriptions to its capital stock. The equity of the bill for this purpose has once been doubted (if not denied) by this court; but we take it that it has now been settled affirmatively.

This suit, in one form or another, has been many times before this court. For its history, and a full statement of the facts and the law of the case, we refer to the reports of former decisions of this court in this particular case. See *Hall v. Henderson,* 134 Ala. 455, 32 South. 840, 63 L. R. A. 673; *Ib.,* 126 Ala. 449, 28

26—173.

South. 531, 61 L. R. A. 621, 85 Am. St. Rep. 53; *Hall v. Alabama Terminal & Imp. Co.*, 104 Ala. 557, 16 South. 439, 53 Am. St. Rep. 87; *Ib.*, 143 Ala. 464, 39 South. 285, 2 L. R. A. (N. S.) 130; *Ib.*, 152 Ala. 262, 44 South. 592. The last decision above referred to settled the questions as to the propriety of the various amendments to the bill, and that they did not constitute a departure from the original.

Since the last appeal in this case, it appears that some of the respondents have compromised their liabilities. The bill was dismissed as to these, but retained against the other three respondents, to-wit, O. C. Wiley, Wiley & Murphree, and J. M. Henderson & Co.

The claim against each of these three respondents is for unpaid subscriptions to the capital stock of the insolvent judgment-debtor corporation, the Alabama Terminal and Improvement Company. These respondents admit subscriptions for stock in the corporation as alleged, and admit original liability to the corporation as for such stock, but set up, as defenses, that the liability had been satisfied and discharged before the filing of the bill.

They also set up the defense—heretofore urged before this court—that a court of equity, at the suit of creditors, is without jurisdiction to pursue and condemn choses in action of an insolvent corporation, such as are sought to be subjected in this suit, which are withheld from the creditors, provided they are so withheld, "without fraud"; that is, in the absence of active fraud, equity is without jurisdiction. This question has been much and ably discussed in former opinions of this court and in briefs of counsel, to be found in the former reports of this case.

The law as contended for by respondents was announced in the case of *Donovan v. Finn,* Hopkins, Ch. (N. Y.), 59, 14 Am. Dec. 531, and probably by a dictum of Lord Thurlow, in *Dundas v. Dutins,* 1 Ves. Jr. 196. And this court was at first inclined to follow these cases to the extent contended for by respondents. But, after extended and mature consideration of this question, we are inclined to recede from the position first taken by this court on the question, and now hold that fraud in the transfer or in the withholding of the assets from the creditors is not necessary to equity jurisdiction in cases like this.

We are now inclined to the opinion, and hold, that the jurisdiction of equity to subject choses in action to the payment of a judgment, after the return of execution, "No property found," is founded upon the necessity for supplying a remedy, where that of the common law is inadequate, and therefore that inadequacy of a legal remedy, and not fraud vel non, is the better test of equity jurisdiction in such cases.—*Public Works v. Columbia College,* 17 Wall. 530, 21 L. Ed. 687; *Watson v. Sutherland,* 5 Wall. 4, 18 L. Ed. 580; *Scott v. Neely,* 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 538; *McConihay v. Wright,* 121 U. S. 220, 7 Sup. Ct. 940, 30 L. Ed. 932; 1 Pom. Eq. §§ 294, 295, 297; 1 Bates, Fed. Pro. § 188; *Brown v. Bates,* 10 Ala. 432; *Spader v. Davis,* 5 Johns. Ch. (N. Y.) 280; *Hadden v. Spader,* 20 Johns. (N. Y.) 554; 1 Story, Eq. Jur. § 53.

The complainants' demand against the insolvent corporation being founded upon a judgment, and the insolvent corporation's claim against the other respondents, sought to be subjected, being founded upon subscriptions to capital stock of the corporation, and the amount of this subscription and the original liability therefor being undisputed, and the equity of the bill,

and the questions as to pleadings and departure, being settled in favor of complainants, there remains for decision only the liability of these particular respondents as for their subscriptions at the time of the filing of the bill.

The special defenses to the bill set up by these respondent stockholders are, first, that they had paid their subscriptions and thus discharged their liabilities; second, that they had sold their stock to third parties, who had assumed the original liability of the respondents, and who were accepted by the corporation as debtors in lieu of the respondents, and that the transferees of the stock had paid the debts or discharged the liability; third, they, or some of them (O. C. Wiley and Wiley & Murphree), set up res judicata, in that they were sued as garnishees by complainants, and were discharged after contest and trial on the merits. Either of these defenses, if well and sufficiently pleaded and established, is good. We will first treat the cases of O. C. Wiley and Wiley & Murphree, as to the defenses of res judicata; they being the only ones who set up this defense.

The ancient doctrine announced by Coke, that estoppels were odious, is not now regarded as correct; and it is certainly not so, when applied to estoppels, by judgment, such as that attempted to be set up in this case. There should be an end to, as well as a right of, litigation. A plea of res judicata, or estoppel by judgment, to be sufficient, must be well pleaded. The true rule in such cases, both as to the sufficiency of the pleadings and of the proof, has been thus quoted and stated by this court: "In the opinion of the Judges, given in the *Duchess of Kingston's Case*, 2 Smith's Lead. Cas. 609 (573), is the following language, given as the result of the numerous decisions relative to judg-

[Hall & Faricy v. Alabama Terminal & Improvement Co., et al.]

ments being given in evidence in civil suits: 'That the judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar, or as evidence conclusive, between the same parties, upon the same matter, directly in question in another court.' It cannot be overlooked that this language lays down a strict rule; yet it is supported alike by reason and authority. The parties must be the same, the subject-matter the same, the point must be directly in question, and the judgment must be rendered on that point. Any of these ingredients wanting, the defense fails. The sentence quoted above has been adopted, both by text-writers and judicial tribunals, and has come to be recognized as a judicial axiom.—*McCravey v. Remson,* 19 Ala. 30, 54 Am. Dec. 194; *Miller v. Jones,* 29 Ala. 174; 1 Greenl. Ev. §§ 528, 529; Freem. on Judgments, § 258. In *Chamberlain v. Gaillard,* 26 Ala. 504, this court said: 'The rule is that judgments are final and conclusive between the parties, when rendered on a verdict on the merits, not only as to the facts actually litigated and decided, but that they are equally as conclusive upon all the facts which were necessarily involved in the issue; and, although the particular matter is not necessarily involved in the issue, yet, if the issue is broad enough to cover it, and it actually arose, and was determined, it may then be connected with the record by evidence aliunde. * * * In the plea we are considering, however, there is no allegation that the question of ownership entered into the issue of the former action.' "—*Gilbreath v. Jones,* 66 Ala. 132, 133.

The rule has been thus stated by the Supreme Court of the United States: "To render the judgment conclusive, it must appear by the record of the prior suit, that the particular matter sought to be concluded was necessarily tried or determined—that is, that the verdict

in the suit could not have been rendered without deciding that matter; or it must be shown by extrinsic evidence, consistent with the record, that the judgment necessarily involved the consideration and determination of the matter."

Unless otherwise provided by statute or rule of practice of courts, such as rule 28, chancery practice (Civ. Code 1907, p. 1537), one requisite to the sufficiency of such pleas and the proof thereof is that the former judgment, set up as an estoppel or res judicata, must have been decided or rendered upon the merits of the case involved in the second suit.

The plea of res judicata interposed in this case would have met the requirements as above quoted, and would have been sufficient if the records which were made exhibits and parts thereof had supported the conclusion of the pleader; but if it be said that it averred facts, and not conclusions, then the plea was inconsistent in its averments, and was not proven. It averred that the answer of respondents was contested, as provided by law, and that the case was tried and determined on its merits, in favor of the garnishees, the respondents here; but unfortunately it made the record of that garnishment proceeding a part of the plea, and the record was inconsistent with the other averments of the plea.

The burden of proof was, of course, upon these respondents to prove this special plea as alleged. In this, we are of the opinion they failed. While they proved that a judgment was rendered in the former suit in favor of the garnishess, and in the very one which was made a part of the plea, they did not prove that the case was heard or tried upon the merits involved in *this* suit, nor even upon the merits of the other action—that in which it was rendered. The record as to this matter shows that, after the answer of the garnishees and the

[Hall & Farley v. Alabama Terminal & Improvement Co., et al.]

affidavit of contest by the plaintiff in garnishment were filed, the case was continued from 1893 to 1895, without any issue having been made up or tendered, as the statute requires, for a contest, and that no trial of contest was ever had. After the affidavit for contest was filed, nothing more appears to have been done, except to continue the case from time to time, until the 15th day of March, 1895, when (so far as the record shows) without any issue being made up or joined, the following order or judgment was entered: "This day come O. C. Wiley and Clarence Murphree, two of the garnishees herein, and move the court to be discharged, and upon consideration it is ordered and adjudged that said garnishees be and they are hereby discharged on their respective answers filed in this cause, that they go hence and recover of the plaintiffs the costs in this behalf expended for which execution may issue."

This shows affirmatively that the judgment was rendered on the ex parte motion of the garnishees, and without an issue of contest having been made up, though proper affidavit for contest had been filed by plaintiffs; that there was not in fact any judgment rendered on the merits, though a judgment of dismissal or nonsuit, as it were, was rendered against the plaintiffs. This judgment does not show or tend to show that they were not then indebted to the defendant corporation. Their answer was the only evidence tending to show this, and it of course was not conclusive upon the plaintiffs; they had the right to contest this answer, and had made the affidavit necessary to contest it, and until there was a contest of the answer, and a judgment thereon, the indebtedness vel non of the garnishees to the corporation, nor the right of plaintiffs (if such they had) to subject the assets to their claim against the corporation, was not determined. A judgment in favor of the garnishee

is never a bar to an action by the defendant, even upon the same demand; a judgment against him is not a bar until it is paid, and if not for the full amount due the defendant it is then only pro tanto a bar.—Rood on Garnishment, § 212; Drake on Attachment, § 707.

The judgment in a law court, discharging the garnishees, attempted to be set up as res judicata to this suit in equity, to be efficacious to such end, must of necessity be a judgment upon the merits of the issue involved in this suit—that is, the garnishees' indebtedness or liability to the defendant—which could be enforced in this suit but for that judgment. That the debt or demand sought to be recovered in the two suits is the same, and that the parties are the same, is not alone sufficient. A debt or demand might be reached in this suit that could not and should not have been reached in the former. The plaintiffs might have failed in the former action in a law court, for the very reason that the particular demand sought to be enforced was an equitable, and not a legal, one. It may be that the judgment in the law court was in favor of the garnishees merely because the plaintiff should have proceeded, as he has done in this suit, in a court of equity, in which event, of course, the former judgment is not res judicata.

This very condition is pointed out by this court in the case of *Teague et al. v. Le Grand,* 85 Ala. 494, 495, 5 South. 287, 7 Am. St. Rep. 64, which, like this, was an action to subject the unpaid subscriptions of stockholders to the claims of the creditors of the insolvent corporation; and Stone, C. J., in that case, said: "Garnishment, such as was resorted to in this case, is purely a legal remedy, a species of statutory attachment. When invoked for the purpose of condemning credits, or legal liabilities due to the defendant in the attachment, it is

not every species of liability that can be reached. It is such as the defendant in attachment can recover of the garnishee in an action of debt, or indebitatus assumpsit, that are subject to this process.—Code 1886, § 2976, and note. True the debt need not be due and presently demandable; but there must be a contract, express or implied, out of which a money liability will certainly spring, in the usual course of things. Many contracts, from which money liabilities may possibly arise, are not subject to garnishment at law. * * * Chancery might have taken jurisdiction, the corporation being insolvent, and itself made calls, and enforced their collection, for the benefit of creditors.—*Glenn v. Semple,* 80 Ala. 159, 60 Am. Rep. 92. A common-law court—the more especially under statutory garnishment—is without the power to do so."

One of the tests as to the sufficiency of a plea of res judicata is, Does the plea show that the identical matter in controversy in the second suit was determined and concluded by the former judgment between the same parties? It is the matter involved in the second, not that involved in the first, which must be concluded by the first judgment. The identity of the parties and of the subject-matter in the two suits is always necessary; but this alone is not sufficient. Nor is the fact that the judgment pleaded was final, and was on the merits of the case in which it was rendered, sufficient; it must have been on the merits of the case in which it is interposed as a bar. The particular issue or matter of controversy involved in the second suit must or should have been determined and concluded in the first.

A plaintiff may have a good cause of action, and may sue in the wrong court, or bring the wrong action, and in either case he will necessarily fail; but the judgment against him in either case will be no bar to a proper

action in the proper court, though each judgment be final and on the merits involved in the particular suit, and the parties to the suits be the same. For examples: A. converts B.'s horse; B. sues A. in detinue therefor, and fails, because A. was not in possession of the horse at the bringing of the suit; this judgment would not be a bar to B.'s action of trover.—*Gilbreath v. Jones*, 66 Ala. 129. Suppose B. takes possession of A.'s house and lot, and A. sues him in detinue therefor, of course he fails; but this judgment is no bar to his action of eject-ment. Suppose A. sells and conveys to B. a house and lot, in consideration of B.'s paying him $100 within 30 days, provided that, if not so paid, B. will pay A. $10 as rent and reconvey to him the house and lot. Then, if B. fails to perform any part of his agreement, and A. sues him in ejectment for the property, of course he fails; but this would be no bar to a proper suit in equity to recover the property.

Let us put the concrete case which is involved in this suit: These respondents subscribed for capital stock in the corporation, the Alabama Terminal and Improve-ment Company; they had paid a part of the subscrip-tion as it was called; the corporation became insolvent; it was sued in a law court by complainants as its cred-itors; judgment was obtained, and respondents were garnished, but answered, "Not indebted to the corpora-tion." This answer was contested, and plaintiff failed, because no call for the unpaid balance of the subscrip-tion had been made upon respondents; this would be no bar to this present suit, because chancery could make the call.—*Teague et al. v. Le Grand*, 85 Ala. 493, 5 South. 287, 7 Am. St. Rep. 64.

But the pleas in any of these cases would be sufficient, if it was or could be shown that any matter necessary to a recovery in the second suit had been finally con-

cluded and determined in the first suit. Of course, res judicata would not be applicable or good, in some of the examples above put, for other reasons than the one we have assigned; but the examples serve to show that the plea in this case under consideration was not good.

Nothing that is said in this opinion is intended to deny the proposition that judgments in garnishment proceedings may not be as conclusive upon the parties thereto as are any other judgments; but we have only attempted to show that they, like all other judgments, are only conclusive as to the matters which were, or should have been, adjudicated thereby.

The plea of res judicata in this case was evasive or inconsistent in its averments. While it alleges, among other things, that the judgment set up as res judicata duly and legally discharged the garnishees and forever relieved them from all liability for and on account of their subscriptions to the capital stock of the Alabama Terminal and Improvement Company, and that the judgment was a final one upon the merits of the controversy, and in favor of the garnishees and against the complainants (who were plaintiffs in the former suit), which, if true, would be res judicata and a bar to this suit, yet the plea also alleges that all this will more fully appear by the records and the proceedings had in the garnishment proceeding, which are made exhibits to and a part of the plea; and on an inspection of the exhibits and records referred to it does not "more fully appear," as alleged, that that judgment is res judicata or a bar to this suit, but the contrary fully appears. To state it differently, that judgment did not relieve the garnishees from all liability for and on account of their subscription to the capital stock of the insolvent company, and the judgment was not rendered on the merits, but was rendered on the ex parte motion of the gar-

nishees, and the garnishees were merely discharged on their answers, and there was no trial on the contest of the answers. So, construing the plea most strongly against the pleader, it was insufficient, and it should have been so held.

It is true that this identical plea was heretofore held sufficient by this court, in this particular case (134 Ala. 510, 32 South. 840, 63 L. R. A. 673). The error, however, in the first opinion, in one or more respects, was pointed out in a later opinion in the same case (143 Ala. 845, 39 South. 285 [2 L. R. A. (N. S.) 130]), by the same learned justice who wrote the first, in which last case he spoke as follows: "It is insisted for appelless that the decree on the motion to suppress depositions, and on the plea of Wiley and others, should not have been made below, inasmuch as the bill was dismissed. This may be so. We need not decide that; nor indeed definitely and absolutely whether those decrees were correct. It is likely, however that the decree on the motion to suppress was right; and that the decree on the sufficiency of said plea, wherein the chancellor followed the opinion of this court on the former appeal, which seems now to have proceeded on the mistaken notion that there *was a contest* of the answers in garnishment alleged in the plea, was erroneous."

However, the decision in the first case was not expressly overruled in this later decision quoted, and the first decision was subsequently followed, and probably extended, in the cases of *Montgomery Iron Works v. Roman,* 147 Ala. 441, 41 South. 811; *Roman v. Montgomery Iron Works,* 156 Ala. 606, 47 South. 136, 19 L. R. A. (N. S.) 604, 130 Am. St. Rep. 106, and *Montgomery Iron Works v. Capital, etc., Co.,* 154 Ala. 663, 664, 44 South. 1044, and it follows, and we now conclude, that upon this point all of these cases were wrong and should be overruled.

The defense of payment of the subscriptions by these respondents was only set up as a defense pro tanto, and was only so proven, and to that extent only is a defense. In fact, it is conceded that each had paid in good faith a part of his subscription to the corporation; and the defense, to this extent, is by appellants admitted to be good, though there is probably a difference between the litigants as to the exact amount so paid by each of the respondents.

The other and last defense we hold was made out. It is in substance that the respondents were not indebted nor liable to the insolvent corporation, the Alabama Terminal and Improvement Company, for any unpaid subscriptions for the shares of capital stock of such corporation issued by it to such respondents, for the reason that while the corporation was solvent these respondents, as such stockholders, in good faith sold their stock at par to other parties or stockholders, who were perfectly solvent, and who, as part of the consideration of such sale, assumed the liability of these respondents to the company, for the balance due on their subscriptions, and that the corporation, with full knowledge of all the facts, accepted the purchasers, in lieu of these respondents, as the owners of such shares of stock, and agreed to look to such purchasers for the balance due, and thereby released these respondents from all liability.

It is true that, in so far as this defense was specially pleaded, it was also alleged that the transferees of this stock had paid to the corporation such balances due as for the original subscriptions for such stock. It is also true that the proof failed as to this allegation as to a part of the respondents, in so far as it was necessary to discharge the transferees from liability to the creditors of the corporation, but not in so far as it was nec-

essary to discharge the transferees from liability to the corporation or to its creditors.

While the proof shows that the balance due was paid, by the transferees, or was not paid in such way or manner as to discharge the liability of the transferees to the creditors, in that it appears that the payment, or a large part thereof, was made with the assets of the corporation; or the stock was in turn resold to the corporation, in payment of this subscription, which was of course, a fraud upon the creditors of the corporation, even if the corporation procured or assented to it. In other words, as against the creditors of the corporation, it could not lawfully purchase the shares of its own stock, nor could it discharge the liability of its stockholders, as for unpaid subscriptions, by paying such debts for the stockholders with the assets of the corporation.

It is the function of a corporation to purchase and sell its property, but not its stock, unless so authorized; and certainly not, if the effect is to defraud its creditors. It is said that corporations have no souls, but it has never been said that they can perform miracles.

Stock in a corporation is only evidence of the right of the holder or owner to share in the proceeds of the corporation's property. So a share of stock only typifies an aliquot part of the corporation's property, or the right to share in its proceeds, to that extent, when distributed according to law and equity. If stock of a corporation is paid, that which is paid, together with its proceeds, becomes the property and assets of the corporation. If not paid, the liability of the stockholder to pay forms the property of the corporation. The latter kind can be, and is intended to be, transformed into the former; but the corporation as an entity owns both, and hence can purchase neither, unless so authorized.

This much has been repeatedly decided in former appeals of this case. But it does not by any means follow that the original stockholders are not discharged from all liability to the corporation or to its creditors, by reason of these subsequent transactions between their transferees and the corporation or its officers. If the corporation or its officers and the transferees of such stock thus attempted to defraud the creditors and to shield the transferees from liability, by the corporation's buying its own stock or paying the subscriptions with the assets of the corporation, which would otherwise be available to the creditors, they could not thereby render the original subscribers liable, after they had in good faith sold their stock and were released from all liability. To be liable as for this fraud, they would have to be parties to it, before or at the time they sold their stock and were thereby released from liability. They must have participated in the fraud, or have been chargeable with notice of it.

This last condition was evidently conceded by the complainants to be necessary to a recovery, and hence it was averred, in the bill as last amended, as to each of the respondents. The averment as to O. C. Wiley in this respect is as follows: "As your orators are informed and believe, and on such information and belief state the fact to be, the defendant Oliver C. Wiley asserts that he sold and transferred his stock in the said Alabama Terminal and Improvement Company to the defendant said Sarportas, the said defendant promising and agreeing to pay to said company his (said defendant Wiley's) subscription therefor and the promises in writing he had made for the payment thereof. Your orators aver that if said sale and transfer were made, it was with the intent to defraud said corporation, and to hinder, delay, and defraud the creditors thereof. The

said defendant Wiley was amply able to pay and satisfy said debt, but was desirous to relieve himself from liability to pay the same, and if such sale and transfer was made, it was a mere contrivance by which he sought to evade and escape from such liability. He well knew that said defendant Sarportas was not a resident of the state of Alabama, and he did not believe and had no good reason to believe he was of ability to pay for the said stock. The said subscriptions and debt of the said Wiley is yet due and unpaid to the said company; said company has never agreed to accept any other person as debtor in his place and stead."

There were averments of fraud as to each of the respondents, varying in details, but in substance the same. These averments were evidently made in the amended bill, either in anticipation of, or in reply to, the defense of a transfer of the stock by the respondents, and release of them from liability for such unpaid subscriptions. In respect to these various allegations of fraud, we think the proof fails as to all of these respondents who are appellees here, whatever it may be said to show as to other respondents, not now parties to this appeal.

The facts of the case as to the sale of the stock by each of the three respondents O. C. Wiley, Wiley & Murphree and J. M. Henderson & Co. as shown by this record, are practically without dispute, and are as follows:

O. C. Wiley, individually, subscribed for 95 shares of the capital stock of the Alabama Terminal and Improvement Company, and gave his conditional note therefor for $9,500, and Wiley & Murphree, a copartnership, subscribed for 120 shares, and gave their conditional note for the same for $12,000. Wiley & Murphree ·sold their 120 shares of stock to A. C. Saportas on June 30, 1890, and O. C. Wiley sold his 95 shares of

stock to A. C. Saportas, on, to-wit, September 25, 1890. Saportas was accepted by the corporation as a shareholder in lieu of Wiley & Murphree and O. C. Wiley, and voted the stock at stockholders' meeting subsequent to his purchase, and was recognized as a stockholder. At the time of the sale of this stock, viz., on June 30, and on, to-wit, September 25, 1890, the Alabama Terminal and Improvement Company was solvent and in good financial standing, and A. C. Saportas was, by the respondents and most of the witnesses, regarded as solvent, and of high credit and financial standing in New York city, the place of his residence, and was the financial agent at that time of the Alabama Terminal and Improvement Company. This company did not become embarrassed until after May 1, 1891.

J. M. Henderson & Co., in the month of January, 1890, agreed to sell and did sell to J. C. Henderson $5,000 of the stock subscribed by them to said company, and J. C. Henderson executed and delivered to them his written obligation, by which, in consideration of $5,000 of the stock so subscribed by these defendants, which was to be issued to him, he agreed to pay or satisfy $5,000 of their said subscription. Said company was immediately notified of said sale of said stock to said J. C. Henderson, and his promise made to these defendants to pay the amount of $5,000, and J. W. Woolfolk, as president of the said company, with authority to bind said company in the premises, agreed to look to and to hold the said J. C. Henderson bound and liable for said sum, and to discharge and release J. M. Henderson & Co., from all liability on account of the same, and executed and delivered an agreement in writing to said J. C. Henderson, to issue to him $5,000 of the stock subscribed by these defendants, upon the payment of that amount of said stock subscription.

[Hall & Farley v. Alabama Terminal & Improvement Co., et al.]

If all this was done in good faith on the part of these respondents, at the times and in the manner shown, of course these respondents are not liable, and ought not to be so held, no matter what fraud in fact or in law may have been subsequently perpetrated by the insolvent company or its officers upon the creditors of the corporation.

There is no direct evidence whatever to show that the first transfer was not in good faith, so far as these respondents were concerned. And there are no facts or circumstances from which it could be reasonably inferred that they acted in bad faith in the matter. In fact, they all tend to show the contrary, in that, at this time and for some time thereafter, the corporation and all the parties to the contract were perfectly solvent, and all had almost unlimited credit, and were apparently prosperous, so far as the evidence shows.

At that time neither these complainants nor their assignors were creditors of the Alabama Terminal and Improvement Company. This company did not open up an account with the Farley National Bank until October 12, 1890. So these complainants are subsequent creditors, and not existing ones as to these transactions; and hence the sales are not void as to them, unless tainted with actual intent to hinder, delay, or defraud them or other subsequent creditors. This court has spoken and quoted as follows on this subject: "A subsequent creditor cannot complain of a disposition of its property by a corporation, unless such disposition was made with intent to hinder, delay, or defraud subsequent creditors, and actually had that operation and effect.—*Graham v. La Crosse & M. R. Co.*, 102 U. S. 148, 26 L. Ed. 106; *Porter v. Pittsburgh Bessemer Steel Co.*, 120 U. S. 649, 7 Sup. Ct. 1206, 30 L. Ed. 830; *Dickson v. McLarney*, 97 Ala. 388, 12 South. 398; *Rollins v.*

*Shaver Wagon Co.,* 80 Iowa, 380, 45 N. W. 1037, 20 Am.
St. Rep., 434; *Schrever v. Scott,* 134 U. S. 405, 10 Sup.
Ct. 579, 33 L. Ed. 955; 2 Morawetz on Corp. §§ 795,
800. And the burden is upon the complainant to allege
and prove such fraud.—*Yeend v. Weeks,* 104 Ala. 339,
16 South. 165, 53 Am. St. Rep. 50. Nor does a creditor,
existing or subsequent, occupy such relation to a cor-
poration's directors as its stockholders."

We repeat that there is no evidence in this record
to show any such fraudulent intent on the part of any
of these respondents at the time these transfers were
made. It is difficult to see how, at this time and under
the conditions then existing, any one could have had
such intent. There is certainly no direct proof to show
that there was then any attempt or any intention to
defraud any one. The reasonable inference, from all
the known or shown facts at that time, is that these
transfers could not and would not injure or defraud
any one. True, as it subsequently turned out, the bank
or these complainants were injured and defrauded; but
it was not these transactions which so injured or de-
frauded them, nor were they alone capable of so doing;
it was subsequent transactions, with which these re-
spondents had nothing to do, and could not have fore-
fended, had they tried, that caused losses to complain-
ants. Of course, as we have before said, if these trans-
fers were a part of the scheme of the corporation, or
its officers or stockholders, to defraud the creditors of
the corporation, and these respondents were parties to
it, or in their transfers they thereby aided or abetted
others to so subsequently defraud the creditors, then
they would be liable in this action, as claimed by the
appellees. But there is no proof to show this, and the
burden of proof as to such matters is upon the com-
plainants; hence they fail in this feature of the case.

Appellants concede this in their brief, in which they say: "As to plea B, we *admit,* of course, that if the corporation or its agent, having authority to act for it in the premises, bona fide accepted a transferee of stock as its debtor for the outstanding note of the vendor, the latter would be released. But we *insist* that this alleged occurrence did not take place in January, 1890, and in a bona fide manner, but after all the Troy stockholders had agreed to betray the terminal company, and in pursuit of the general swindle of defrauding the creditors of the company by kiting with the Farley Bank and getting rid of their stock liability through the manipulations of Woolfolk and his coadjutors; and after the terminal company was really insolvent, all its assets having been, or being in the process of being, diverted by fraud to the buying of the subscribers' stock, or in the building of the M. T. & M. R. R." We find that the undisputed evidence in this case, so far as these respondents are concerned, shows the facts to be what appellants above "admit," and that there is no positive or direct proof of appellants' "insistence," and that the matters thus insisted upon cannot be reasonably inferred from any other facts which are proven.

It is also argued by appellants that, as there was no transfer of the stock in question entered upon the books of the corporation, as provided by the statute (Code 1896, §§ 1261-1263), the transfer was for that reason void, and the transferrors remained bound; that is, that such registration was necessary to respondents' release from liability to the creditors of the corporation. This we do not understand to be the law on this subject. This court has often decided the question as follows: "These statutes do not render the transfer void for a failure to comply therewith, except as to the class therein contemplated. This court has often held that a

transfer, though not registered, was good as between the parties thereto.—*Duke v. Cahawba Co.* 10 Ala. 82, 44 Am. Dec. 472; *Fisher v. Jones,* 82 Ala. 117, 3 South. 13; *Campbell v. Woodstock Co.,* 83 Ala. 351, 3 South. 369. It has also been held that sections 1262, 1263, and 1265 should be construed in connection with each other. In the case of *Fisher v. Jones, supra,* it was said: 'The purpose of the statute on this subject is obviously to give notice of the title to creditors and purchasers, so as to prevent fraudulent transfers, and to protect the corporation itself in determining the question of membership, the right to vote, the payment of dividends, and other incident of ownership.' We do not think that these statutes were intended for the protection of creditors of the corporation, but creditors of and purchasers from the stock holders."

Shares of stock in a private corporation, in this state, are personal property, and may be sold and transferred as other personal property, though no certificates for the stock have been issued or registered.—See Code sections, supra, and cases there cited, and also *Henderson v. Mayfield Woolen Mills,* 153 Ala. 625, 45 South. 211.

It is likewise insisted by the appellants that the transfers of stock in question, with the assumption of the unpaid subscriptions by the transferees thereof and the release of the transferrors from liability, were inoperative or ineffective to this end, because the transactions in question were not first authorized at a regular meeting of the board of directors of the corporation; that the president of the corporation had no authority to assent to such transactions, unless he was first specifically authorized to do so by the board of directors. If the abstract proposition of law involved in this argu-

ment could be said to be sound, it is not applicable, either to the pleadings or proof in this case.

It is alleged in the bill as last amended "that the said Alabama Teminal and Improvement Company left the entire management of its affairs to J. W. Woolfolk, its president, and that he conducted all its affairs;" and this averment is supported by the proof, and it is shown that he assented to all the transactions in question, and approved them after they were consummated; and they were afterwards duly ratified by the corporation. A corporation can subsequently ratify whatever it could in the first instance have lawfully authorized. But here the pleadings and proof taken together show both authorization and ratification by the corporation. The directors of the corporation, so far as the creditors are concerned, had a right to leave to Woolfolk, as the president, the entire management and discretion as to these transactions in question. The officers of a corporation are trustees for the stockholders, but not for the creditors of the corporation. *Force v. Age-Herald Co.,* 136 Ala. 278, 33 South. 866; *O'Bear Co. v. Volfer,* 106 Ala. 205, 17 South. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31.

It is insisted by appellants that the respondents J. M. and J. C. Henderson testified differently on their last examinations from what they did on their first, and that for this reason we should disregard all of their testimony showing good faith in this matter, certainly so far as the date of the sale of stock by J. M. Henderson & Co. to J. C. Henderson is concerned. It is a sufficient answer to this argument to say that it affirmatively appears from this record that all of the testimony of these two witnesses, on the two separate examinations complained of, is not set out. Hence we cannot know what that difference was, or that it was, as is argued. There is no reason shown by the record why we

should disbelieve the testimony of these witnesses on the last examination.

It is argued that on the first examination, in 1895, they did not know the exact date of the sale of the stock; that they knew nothing more definite than that it was several months prior to December 13, 1890; and that on the last examination, 12 years thereafter, they say pat and positively that it was in January, 1890. If this were shown by the record, we would not think it alone a sufficient reason to conclude that they have sworn falsely on either examination, and there is no other reason assigned why they should be disbelieved. They might not, on the first examination, have rendered accurately the dates, and have subsequently refreshed their memories by referring to some memoranda or writing which fixed the date exactly, and enabled them thereafter to remember it. Moreover, we find a plea (Record, pp. 17, 18) which was sworn to by J. M. Henderson, on the 21st day of April, 1894, alleging that the transaction was had in the month of January, 1890—the exact date fixed by both the witnesses on their last examinations.

It is also insisted that appellees had no right to re-examine J. M. and J. C. Henderson as witnesses, and that the last depositions of these witnesses should have been suppressed. If the re-examination was had without first obtaining an order of the court to that effect, it was matter which could be waived, and the record shows that it was waived by an agreement of counsel, and by the fact that appellants cross-examined the witnesses without objection. If the trial court could have suppressed the depositions because taken without a special order of the court for that purpose, it was discretionary with the trial judge to do so or not, as he thought the rights of the parties would be best sub-

served thereby, and we see no abuse of that discretion.

The pleadings and proof in this case bring it squarely within the principles of law decided by this court a number of times, which are as follows: A stockholder of a solvent corporation is discharged from liability to the corporation as for the unpaid subscription on his stock by a bona fide transfer of such stock to a solvent transferee, if done with the consent of the corporation, or if it subsequently, with full knowledge of all the facts, assents to or ratifies the transaction. The transferee or purchaser in such case is thereby subrogated to all of the rights and powers, and subjected to all of the duties and liabilities, of the original stockholders. Cook on Corporations (5th Ed.) §§ 255, 256 and 258; 3 Thomp. on Corp. p. 1804; *Henderson v. Mayfield,* 153 Ala. 625, 45 South. 211; *Allen v. Montgomery,* 11 Ala. 437.

It is, however, insisted by appellants that this doctrine is only applicable as to future calls for stock, and has no application as to amounts past due as for previous calls. This is ordinarily true, and is not at all different from the doctrine stated above; in fact, it is the application of the same doctrine which is applied without any special agreement between the parties at the time of the transfer and sale, as to the respective rights, duties and liabilities of the transferror and transferee as to the unpaid subscriptions. This much is implied from the transfer and sale of the shares, in the absence of an express agreement as to such rights and liabilities. Appellants rely upon the case of *Webster v. Upton,* 91 U. S. 65, 23 L. Ed. 384, in support of their argument, in attempting to distinguish this case from the general rule, upon the ground that calls had been made for the full amount of the subscriptions before the transfers.

This decision relied upon is not at all different from those of our court above referred to, nor from the proposition as announced in the text-books upon the subject; in fact it quotes at length from such texts. But in that case the court was speaking of the *implied* promises to pay and release, and not to the *expressed* ones, which were made by the parties and formed a part of the sale or transfer, and which were consented or acceded to by the corporation. On this subject the court in that case said: 'But, if the law implies a promise by the original holders or subscribers to pay the full par value when it may be called, it follows that an assignee of the stock, when he has come into privity with the company by having stock transferred to him on the company's books, is equally liable. The same reasons exist for implying a promise by him as exist for raising up a promise by his assignor. And such is the law as laid down by the text-writers generally, and by many decisions of the courts." So the distinction contended for by appellants, and which is pointed out in the text-books, has no application here, for the reason that here there were expressed provisions and contracts as to the substitution of debtors, and change of rights, liabilities, and duties of the transferrors and transferees of the shares, and which were either consented or acceded to by the proper party—creditor corporation.

It follows from what is said above that none of the respondent appellees were shown to be liable to the Alabama Terminal and Improvement Company, nor to the complainants, at the time of the filing of this bill, nor thereafter, and that the bill was properly dismissed.

Affirmed.

DOWDELL, C. J., and SOMERVILLE, J., concur. SIMPSON, ANDERSON and MCCLELLAN, JJ., concur in the con-

[Sullivan, Trustee, v. Central Land Co., et al.]

clusion, but are of the opinion that the decisions in the cases of *Iron Works v. Roman,* 147 Ala. 441, 41 South. 811, and *Iron Works v. Capital City, etc.,* 154 Ala. 663, 44 South. 1044, are sound, and should not be departed from.